I. INTRODUCTION
In this case, the defendant-appellant, Emmett Stromas, Sr., a/k/a "Goldie", age 46, appeals both his conviction in the Circuit Court of Forrest County on the charge of selling a controlled substance and his sentence as a subsequent offender to serve a term of 60 years in the Mississippi Department of Corrections. Stromas asserts the following errors:
 (1) The trial court erred in allowing a tape recording of the drug transaction into evidence without first requiring the State to properly authenticate it. *Page 118 
 (2) Stromas's federal and state constitutional right to confront the witnesses against him was violated.
 (3) Stromas's sentence of 60 years confinement to the Mississippi Department of Corrections violates the Eighth Amendment's Prohibition of Cruel and Unusual Punishment.
 II. FACTS
On February 9, 1989, at approximately 1:00 a.m., undercover agent, Lee Holcomb, and informant, Theresa Gendron, met Emmett Stromas, Sr. in front of Stromas's apartment in Hattiesburg for the purpose of buying cocaine. Stromas entered Holcomb's car and the three of them drove to another Hattiesburg apartment complex where Stromas was to pick up the drugs. During this ride, the three's conversation regarding the price and amount of cocaine to be purchased was recorded by a Unitel recording device worn by Holcomb. Once at the complex, Holcomb gave Stromas $70.00. Stromas then exited the car and returned seven or eight minutes later with some cocaine. The three drove back to Stromas's apartment; their conversation was again recorded.
On August 10, 1989, Stromas was indicted on the charge of sale of a controlled substance, and a trial was held on July 17 and 18, 1990. At trial, the State introduced the tape recording made by Holcomb. Holcomb and other police officers testified as to the authenticity of the recording and the identification of the substance purchased as cocaine, but Theresa Gendron did not testify. The State claimed that Gendron had moved her residence and could not be located.
At the conclusion of the trial, a jury found Stromas guilty on the charge of sale of a controlled substance. Because he had previously been convicted of possession of marijuana, Stromas was indicted and adjudged to be a subsequent offender pursuant toMiss. Code Ann. § 41-29-147 (1972) and sentenced to a term of 60 years confinement to the Mississippi Department of Corrections.
 III. ANALYSIS Issue A. The trial court erred in allowing the tape recording of the drug transaction into evidence without first requiring the State to properly authenticate it. 1.
Before evidence may be admitted at trial, it must first satisfy the relevancy test of Miss.R.Evid. 401. Something is relevant if:
 [it has a] tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Miss.R.Evid. 401.
Once the evidence is determined to be relevant, it must then be properly authenticated and identified under Miss.R.Evid.901[1]:
 General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
As an example of what is required for the admission of evidence such as a tape recording, Rule 901(b)(5) provides:
 Voice Identification. Identification of a voice, whether heard firsthand or through mechanical of electronic transmission or recording, [may be properly authenticated] by opinion based upon *Page 119 
hearing the voice at any time under circumstances connecting it with the alleged speaker.
Whether the evidence presented satisfies Miss.R.Evid. 401 and901 is a matter left to the discretion of the trial judge.Miss.R.Evid. 104(a). His decision will be upheld unless it can be shown that he abused his discretion. Butler v. State,592 So.2d 983, 986 (Miss. 1991); Monk v. State, 532 So.2d at 599.
 2.
Stromas argues that the seven factor test enunciated in Monk
and Sparks (see footnote 1) is applicable to this case and was not met by the State. His argument has no merit. As stated earlier, this seven factor test has been supplanted by the Rules of Evidence and is no longer applicable to the admission of tape recordings. Thus, this Court looks to Miss.R.Evid. 401 and 901
to determine if the tape recording was properly authenticated and identified by the state.
Certainly a tape recording of the alleged drug transaction is relevant. See Miss.R.Evid. 401. The tape's admission makes the drug transaction more likely to have taken place. See Butler,
592 So.2d at 984.
Once relevancy is determined, for the tape recording to be properly admitted the State must present evidence "sufficient to support a finding that the matter in question is what its proponent claims." Miss.R.Evid. 901. The State may prove that the tape recording is, in fact, a recording of Stromas, Holcomb, and Gendron by "opinion based upon hearing the voice at any time under the circumstances connecting it with the alleged speaker."Miss. R.Evid. 901(b)(5). During the drug transaction, Holcomb was wearing a recording device which transmitted the conversation to the surveiling officers, Eddie Clark and Richard Cox. During the direct testimony of Cox, the State elicited the following testimony regarding the tape recording of the transmission:
 Q. When you work an undercover operation with a drug agent and an informant, are they wired?
 A. The undercover agent, yes, sir.
 Q. And what do you mean by being wired?
 A. It is a body transmitter, a wireless body transmitter, meaning there is no cord from the body to the receiver. It's done by radio frequency. It's powered by two nine-volt batteries. It's anywhere from one and a half to one watt.
 Q. Are all your agents trained on how to use that?
 A. Yes, sir.
 Q. And you, in fact, are trained on how to use it?
 A. Yes, sir.
 Q. You go through certain steps to make sure it works?
 A. That's correct.
 Q. Do you record what is transmitted?
 A. Yes, sir, we do.
 Q. How is that done?
 A. It's recorded on a receiver, comes in the receiver and then goes to a recorder, which is a self-contained unit. What I mean by that is you can turn it on and turn it off. And the transmitter, once it's turned on, then it's voice activated, the recorder starts.
 Q. I'll hand you an item that you just tendered to the court reported, and ask if you can identify that for me, please, sir.
 A. Yes, sir, I can.
 Q. What is that?
 A. It is a cassette tape, which bears the markings MH890003669, 0130 hours, 2-9 of '89.
 Q. What is that purported to contain in that envelope?
 A. It's the cassette of the transaction made by Sergeant Holcomb.
 Q. When did it come into your possession?
 A. On 2-9-89, at 0130.
 Q. And has it remained in your constant care, custody and control until you tendered it to the court today?
 A. Yes, sir, it has. *Page 120 
 Q. And have you had occasion to listen to that tape again?
 A. Yes, sir.
 Q. Is that tape accurately and correctly record what you heard being transmitted over the wire?
 A. Everything, yes, sir.
 Q. And has there been any gaps, additions, deletions from that tape from the time it was originally recorded until you tendered it to the court reporter?
 A. No, sir.
 Q. Do you know what device was used to record that tape?
 A. Yes, sir, I do.
 Q. What is it?
 A. The cassette recorder which was connected to the receiver.
 Q. And was the device used to record voices that appear on that tape competent and capable of recording voices that appear thereon?
 A. Yes, sir.
 Q. Were the operators that recorded those conversations competent in using the equipment?
 A. Very much.
 Q. And where has the tape been at all times since it was recorded?
 A. In my evidence locker.
 Q. Are you able to identify the voices that appear on that tape?
 A. Yes, sir.
 Q. Whose voices appear on that tape?
 A. You will hear Sergeant Holcomb, Theresa Gendron and Emmett Stromas, alias Goldie.
 Q. What, if any, offers of hope of reward, threats, or other promises were made in connection in order to record the conversations on those tapes? Any promises made?
 A. No.
 Q. Were any threats made?
 A. No, sir.
 Q. Were any inducements made?
 A. No, sir.
 (Emphasis added).
As stated earlier, this Court will not reverse the trial court's decision unless there is an abuse of discretion. In ruling the tape admissible, the trial court thoroughly examined the evidence and made the following statements on the record:
 This Court specifically finds that [the tape] was an accurate reproduction of the conversation that took place on that particular time, that has been elicited through evidentiary testimony in regards hereto.
 . . . .
 This Court specifically finds that there have been no changes made, or no deletions or additions to the recording and there has been a finding as far as the correctness of it.
 The genuineness or the authenticity of the recording has been established by the State of Mississippi.
 There has been no showing by the defendant that there is any possibility of any erasures or deletions whatsoever, and that being the case, that will not be before the court.
 There has been a previous showing that the recorder did reproduce the actual voices of those persons who are contained in the conversation.
 Since this is not in the manner of a confession, we did not go to the freeness and voluntariness of it. Also from a standpoint of admissibility the Court would cite Rules of Evidence, 901, specifically 901(a) and 901(b)(5).
 . . . .
 This Court is of the opinion that there is clear and convincing evidence to the testimony at hand that has been established by the State of Mississippi.
Cox explained the circumstances surrounding the making of the tape recording and also provided a detailed account of the "chain of custody" from the taping to the trial. Finally, Cox identified all the voices on the tape. The trial judge thoroughly examined the tape and the State's authentication evidence and found the tape recording to be admissible. This decision was within the judge's discretion and is upheld. *Page 121 
 Issue B: Stromas's federal and state constitutional right to confront the witnesses against him was violated. 1.
A criminal defendant is guaranteed the right to confront the witnesses against him. U.S. Const. amend. VI; Miss. Const. Art.3, § 26. See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Ahmad v. State, 603 So.2d 843, 846 (Miss. 1992). Stromas argues that in failing to provide information of the whereabouts of informant Theresa Gendron, the State deprived him of the opportunity to confront her and call her as a witness before the jury in violation of his constitutional right to confront the witnesses against him.
 2.
In Copeland v. State, 423 So.2d 1333, 1335 (Miss. 1982), this Court addressed the question of whether the State was required to disclose the name of a confidential informant. In describing the duties incumbent on the State, this Court collaterally addressed our issue in the instant case:
 At a minimum, if the circumstances dictate disclosure of the identity of an informant, the state must in good faith, disclose all information in its possession, including that of location.
Id. at 1335 (Emphasis added). As a matter of proof, this Court presumes that the State is in good faith and then imposes a duty on the defendant to show that the State acted in bad faith:
 In the present case there is no intimation of bad faith on the state's part. The appellant did not seek to show that the state had deliberately withheld information or acted in bad faith in its compliance with the court order to furnish any available information. Absent such a showing we cannot say that the appellant's rights were violated.
Id. at 1336.
Applying Copeland to the case sub judice, the State had a duty to disclose in good faith any information it had as to Gendron's whereabouts. The State's offer of information is presumed to be in good faith, and it is incumbent on Stromas to show it is otherwise. Stromas filed a Motion to Produce Theresa Gendron and Compel Her to Appear at Trial. At the hearing on the motion, the State testified to the following:
 The confidential informant on this sale that occurred here was named Theresa Gendron. We have disclosed the deal to [Stromas's attorney], that she was a paid confidential informant. We ran her criminal history back and we could find no criminal record with the records officer, Jeff Byrd. We further went on, trying to locate her address. The last one, the last address we have is located in Hattiesburg. We received information that she was working on the Gulf Coast, in the Oceans Springs area, in Gautier. I had Mike Humphreys, with the Forrest County Sheriff's Office, to contact law enforcement in Jackson County to ascertain her whereabouts. They could not find her in Jackson County and referred us that they thought she was now residing in Waynesboro. She is separated from her husband, Roy Gendron, and was living somewhere in Waynesboro.
 . . . .
 We looked at Waynesboro, Judge, and found a police officer that we thought might know of her whereabouts there, that she was close friends with. He had not seen her in several weeks and he did not know where she was now residing.
The State then called Agent Mike Humphrey of the Metro Narcotics Unit. Humphrey testified that he had attempted to locate Theresa Gendron in Ocean Springs; that he was informed that she had moved to Waynesboro; that he had been unable to locate her in that town; and that he had "no idea" where she was.
The trial court never affirmatively ruled on the above Motion to Produce and Compel. However, Stromas again raised this issue in a Motion for Directed Verdict after the State finished its case-in-chief and was overruled. *Page 122 
 3.
Stromas does not allege any bad faith by the State, but simply argues that because the State could not locate Gendron, his defense was fatally impaired. The State provided evidence as to its good faith attempt to locate Gendron and the trial court did not abuse his discretion in finding that Stromas's right to confrontation had been satisfied.
 Issue C: Stromas's sentence of sixty (60) years confinement to the Mississippi Department of Corrections violates the Eighth Amendment's Prohibition of Cruel and Unusual Punishment. 1.
Stromas was found guilty of the crime of sale of a controlled substance. A conviction for sale of cocaine carries up to a 30 year sentence and a fine of $1,000 to $1,000,000. Miss. CodeAnn. § 41-29-139(b)(1) (Supp. 1992).[2] Because Stromas had an earlier conviction of possession of marihuana, the trial judge found him guilty as a subsequent offender under Miss. Code Ann.§ 41-29-147 (1990).[3] He sentenced him to 60 years in the custody of the Mississippi Department of Corrections. He was given a 30 year sentence for his sale of a controlled substance conviction, and the conviction was then doubled because he was a subsequently offender, for one sentence of 60 years.
 2.
On appeal, Stromas asserts that his 60 year sentence violated the Eighth Amendment's prohibition of cruel and unusual punishment. U.S. Const. amend VIII.
As a general rule, a sentence will not disturbed on appeal so long as it does not exceed the maximum term allowed by statute.Wallace v. State, 607 So.2d 1184, 1188 (Miss. 1992); Flemingv. State, 604 So.2d 280, 302 (Miss. 1992); Reed v. State,536 So.2d 1336, 1339 (Miss. 1988); Corley v. State, 536 So.2d 1314, 1319 (Miss. 1988). However, where a sentence is "grossly disproportionate" to the crime committed, the sentence is subject to attack on the grounds that it violates the Eighth Amendment prohibition of cruel and unusual punishment. Wallace, 607 So.2d at 1188; Fleming, 604 So.2d at 302.
In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the U.S. Supreme Court articulated a three-prong test for evaluating proportionality. The elements include:
 (1) The gravity of the offense and the harshness of the penalty;
 (2) Comparison of the sentence with sentences imposed on other criminals in the same jurisdiction; and
 (3) Comparison of sentences imposed in other jurisdictions for commission of *Page 123 
the same crime with the sentence imposed in this case.
Solem, 463 U.S. at 292, 103 S.Ct. at 3011. This Court has adopted the Solem test in several cases. See Wallace, 607 So.2d at 1188; Fleming, 604 So.2d at 302-303; Jones v. State,523 So.2d 957, 961 (Miss. 1988); Clowers v. State,522 So.2d 762, 764 (Miss. 1988); Presley v. State, 474 So.2d 612, 618-619 (Miss. 1985).
 3.
Stromas asserts that the Solem test is applicable to this case and argues that a sentence of 60 years confinement for a single sale of a small amount of cocaine is inconsistent with other sentences in this jurisdiction and in other jurisdictions. He also argues that he is a drug addict and the use of a prior marihuana possession charge to enhance the penalty of a subsequent sale charge is "cruel in its failure to consider the extent to which the addict's repetition of prescribed behavior is attributable to his addiction."
The State argues that Stromas's sentence is not one which requires an analysis under Solem. The State further argues that even if Solem applies, Stromas has cited no cases to support a reduction in his sentence.
 4.
Under Miss. Code Ann. § 41-29-139(b)(1), Stromas received the maximum penalty of 30 years for his crime. Under this subsequent offender statute, Miss. Code Ann. § 41-29-147, this sentence could be increased by as much as 100% and Stromas's sentence was, indeed, doubled to 60 years.[4]
Miss. Code Ann. § 41-29-139(b)(1) is very broad in its application. The sale or intent to sell of any amount of cocaine is covered. Although Stromas sold only a small amount of cocaine, he received the maximum term penalty, 30 years, but he received less than the maximum total penalty since no fine was imposed. (See footnote 2, supra, for quoted statutory authority.)
Miss. Code Ann. § 41-29-147 is also very broad in its application. According to the statute, an offense is considered a second or subsequent offense if, prior to his conviction, the offender has been convicted of any crime "relating to narcotic drugs, marihuana, depressant, stimulant or hallucinogenic drugs." If a person is found to be a subsequent offender, his sentence can be enhanced by as much as 100%. Stromas only had one prior conviction of possession but had his sentence doubled.
 5.
Although this sentence seems quite severe, it is not a "grossly disproportionate" sentence for the crimes that Stromas committed. Drug offenses are very serious, and the public has expressed grave concern with the drug problem. The legislature has responded in kind with stiff penalties for drug offenders. It is the legislature's prerogative, and not this Court's, to set the length of sentences.
Because this sentence was within the statutory guidelines, and because this State's legislature, as a matter of public policy, has called for stiff penalties for drug offender, Solem v. Helm
is not implicated in this case. Declaring a sentence violative of the Eighth Amendment to the U.S. Constitution carries a heavy burden and only in rare cases should this Court make such a finding. As we held in Barnwell v. State, 567 So.2d 215 (Miss. 1990):
 Apart from the factual context of Solem — a sentence of life in prison without the possibility of parole — or a sentence which is manifestly disproportionate to the crime committed . . . extended proportionality analysis is not required by the Eighth Amendment.
 . . . .
 Though no sentence is "per se" constitutional, this Court, in the context of our habitual statutes, as well as in sentencing other offenders, has recognized the broad authority of the legislature and *Page 124 
trial court in this area and had repeatedly held that where a sentence is within the prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual.
Id. at 221-222.
CONVICTION OF SALE OF A CONTROLLED SUBSTANCE IS AFFIRMED AND SENTENCE OF SIXTY YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS UNDER MISS. CODE ANN. § 41-29-139(b)(1) AND UNDER MISS. CODE ANN. § 41-29-147 (SUPP. 1992) AS A SUBSEQUENT OFFENDER, AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
[1] Traditionally, this Court required the State to provide substantial predicate before a tape recording could be received into evidence. Before the Rules of Evidence became effective in July 1, 1986, the State had to satisfy the following 7 factor test to admit a tape recording:
 (1) A showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3) establishment of the authenticity and correctness of the recording; (4) a showing that changes, addition, or deletions have not been made; (5) a showing of the manner of the preservation of the speakers; (6) identification of the speakers; and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.
Monk v. State, 532 So.2d 592, 599 (Miss. 1988); Sparks v.State, 412 So.2d 754, 757 (Miss. 1982).
[2] § 41-29-139. Prohibited acts; penalties.
(a) Except as authorized by this article, it is unlawful for any person knowingly or intentionally:
 (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter transfer, manufacture, distribute or dispense, a controlled substance . . .
(b) Except as otherwise provided in subsection (f) of this section or in Section 41-29-142, any person who violates subsection (a) of this section shall be sentenced as follows:
 (1) In the case of controlled substances classified in Schedule I or II, as set out in Sections 41-29-113 and 41-29-115, [cocaine is a Schedule II controlled substance] . . . such person may, upon conviction, be imprisoned for not more than thirty (30) years and shall be fined not less that One Thousand Dollars ($1,000.00) nor more than One Million Dollars ($1,000,000.00) or both . . .
[3] Miss. Code Ann. § 41-29-147 (Supp. 1992) is as follows:
 Except as otherwise provided in Section 41-29-142
[Enhanced penalties for sale, etc. of controlled substances within certain distances of schools], any person convicted of a second or subsequent offense under this article may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.
 For purposes of this section, an offense is considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this article or under any statute of the United States or of any state relating to narcotic drugs, marihuana, depressant, stimulant or hallucinogenic drugs.
[4] Under Miss. Code Ann. § 47-7-3 (Supp. 1992), because Stromas's sentence is more than 30 years, he automatically becomes eligible for parole in 10 years. Of course, there is no guarantee that Stromas will, in fact, be paroled. He will simply be eligible for parole.