752 So.2d 416 (1999)
Jimmy RATLIFF, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01798-COA.
Court of Appeals of Mississippi.
November 23, 1999.
*418 Gregory Allen Meyer, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE KING, P.J., DIAZ, AND IRVING, JJ.
IRVING, J., for the Court:
¶ 1. Jimmy Ratliff was convicted of the sale and transfer of marijuana within fifteen hundred feet of a church. He was sentenced to serve a term of six years in the custody of the Mississippi Department of Corrections, three years to run concurrently with a sentence he was serving on a previous conviction and three years to run consecutively to the sentence given him in this case. He was further ordered to pay a fine of $6,000 and court costs of $248. Aggrieved, he filed this appeal and raises the following issues which are taken verbatim from his brief:
I. The Appellant was denied effective assistance of counsel that resulted in representation that was constitutionally inadequate.
II. The trial court erred in allowing a tape recording of the alleged drug transaction into evidence over the objection of defense counsel.
III. The trial court erred in failing to grant the Appellant's Motion for JNOV or in the Alternative for a New Trial, based upon the sufficiency of the evidence.
Finding no reversible error, we affirm.

Facts
¶ 2. The facts, according to the State's case are as follows:
¶ 3. Jeff Medlin, Assistant Chief of the Ripley Police Department, testified that at the time the crime was committed he was working as an undercover operative with the Mississippi Bureau of Narcotics under Agent Jeff Palmer. On May 10, 1996, he was called in by Palmer to work with a confidential informant (CI) named Bethany Johnson who had been "rolled" by the prosecutors in an attempt to apprehend Ratliff, who was suspected of being a major drug dealer and supplier. A pre-buy meeting was held, and Medlin was equipped with a body wire and was issued buy money.
¶ 4. Medlin and the CI then drove to Ratliff's mother's house with the intention of making a drug purchase from Ratliff. The house was located less than a thousand feet from a church. When they arrived at the location, Ratliff was not in sight. The CI called out from the vehicle to someone to "tell Jimmy to come here." Shortly thereafter, Ratliff appeared at the vehicle occupied by Medlin and the CI. Ratliff was asked the price of an ounce of marijuana, and he responded that it was $130. Ratliff offered to meet Medlin and the CI at another location to make the sale. The CI responded that she did not know that location. Ratliff then spoke to a black male who was nearby, and who was later identified as Victor Agnew. Agnew walked over and handed Medlin a bag of marijuana. Medlin testified that he gave the money for the purchase, $140, to Ratliff.
¶ 5. Some ambiguity existed in Palmer's written report regarding who Medlin actually gave the money to, Agnew or Ratliff, when the marijuana was purchased. Palmer's written report stated that "at approximately 1555 hours, Medlin received the plastic bag of alleged marijuana from Agnew in exchange for $140." When asked on cross-examination about the lack of any link between Ratliff and the money in his written report, he testified that was the reason Agnew and Ratliff were both *419 charged with the sale. A cassette tape recording of the transmission from Medlin's body wire was admitted into evidence as an exhibit to Medlin's testimony and played for the jury over objection by Ratliff that it had not been properly authenticated.

Analysis of Issues Presented

I. Ineffective assistance of counsel.

Standard of Review
¶ 6. The standard of review for ineffective assistance of counsel is set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test to be applied is (1) whether counsel's overall performance was deficient and (2) whether or not the deficient performance, if any, prejudiced the defense. Id. The defendant has the burden of proving both prongs. Taylor, 682 So.2d at 363. The adequacy of counsel's performance, as to its deficiency and prejudicial effect, should be measured by a "totality of the circumstances." Id. However, there is a strong, yet rebuttable, presumption that the actions by the defense counsel were reasonable and strategic. Cole v. State, 666 So.2d 767, 775 (Miss.1995). In short, defense counsel is presumed competent. Foster v. State, 687 So.2d 1124, 1130 (Miss. 1996). Finally, the defendant must show that there is a reasonable probability that but for the error of counsel, the jury's verdict would have been different. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss. 1992).
¶ 7. Ratliff contends he met the Strickland standard by showing his counsel's deficient performance in the following particulars:
Counsel's failure to object to statement of prosecutor
During voir dire, the prosecutor made the following statement:
Additionally, there arethere were two individuals in this case. There was another individual who was indicted with Mr. Ratliff, an individual by the name of Vic Agnew. He has pled guilty and is out of this case. The fact that two individuals are charged with the same offense, legally, you can both be guilty. Counsel's failure to object to testimony by Agent Jeff Palmer

Ratliff claims the following testimony is prejudicial hearsay:
Q. And referring to the case that was made on Friday, May 10, 1996, had you gathered some information in regards to some marijuana being sold?
A. Yes, sir, we did.
Q. And in that situation, did you have a CI giving you some information?
A. Yes, sir, we did have a CI that stated that Jimmy Ratliff and his friends were selling marijuana but Jimmy was the main supplier of selling marijuana.
On re-direct examination, Agent Palmer gave the following testimony:
Q. Did you hear who they called over to the car?
A. Yes, sir, I remember hearing the CI saying, Jimmy, will you come here, please, or something to that manner.
Counsel's questioning of Agent Palmer
¶ 8. Ratliff also claims defense counsel invited hearsay in the following exchange on cross-examination of agent Palmer:
Q. Isn't it true that Officer Medlin told you that he received the marijuana from Mr. Agnew?
A. Yes, ma`am.
Q. And didn't he also tell you he received that marijuana from Mr. Agnew in exchange for $140?
A. I believe what he told me that he paid Mr. Ratliff $140 but received the marijuana from Mr. Agnew.
¶ 9. The jury's exposure to Agnew's participation in the crime was inevitable because Agnew was a principal player in the transaction, and the State was entitled *420 to tell the story of what happened during the transaction. The fact that Agnew pleaded guilty was not repeated by any witness at trial. However, his participation in the crime was properly before the jury to make of it whatever it chose. When the prosecutor's statements are considered in their full context, it is readily apparent that Ratliff makes much ado about nothing. The prosecutor was inquiring as to whether members of the potential jury would be disposed to finding Ratliff not guilty simply because another person, Agnew, had already pleaded guilty. We fail to see the error of counsel in not objecting to the prosecutor's question or comment, but even if there were error, we are convinced that it was harmless and certainly not sufficient to warrant a finding that trial counsel's failure to object met either of the Strickland prongs.
¶ 10. The statement, related by the CI to Palmer and/or others, that Ratliff and his friends were selling marijuana is indeed hearsay and could have been objected to by Ratliff's trial counsel, but his counsel's failure to do so, in light of the overwhelming evidence against Ratliff, falls far short of constituting ineffective assistance of counsel within the meaning of Strickland. Palmer's statement on re-direct examination as to what he heard the CI say at the scene of the crime is arguably not hearsay because it appears the statement was offered for the purpose of testing Palmer's recollection of the events on that occasion rather than for the purpose of proving the truth of the matter asserted. Nevertheless, assuming the statement to be hearsay, we likewise find counsel's failure to object to be far from the stringent requirements of Strickland. As to the alleged invited hearsay during the cross-examination of Palmer, we see nothing improper about counsel's action. In fact, counsel was doing an admirable job getting Palmer to admit that the marijuana was actually obtained from Agnew, not Ratliff. This assignment of error is without merit.

II. Improper admission of evidence.

Standard of Review
¶ 11. The relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused. Unless the trial judge's discretion is so abused as to be prejudicial to a party, this Court will not reverse his ruling. Stewart v. Stewart, 645 So.2d 1319, 1320 (Miss.1994) (quoting Century 21 Deep S. Properties v. Corson, 612 So.2d 359, 369 (Miss.1992)).
¶ 12. Ratliff claims that the tape was not properly authenticated because Medlin did not operate the recording equipment, but only wore the recording device. He also alleges that the tape should not have been admitted because no transcript of the tape, that Officer Medlin helped prepare, was presented at trial. He cites the case of Ragin v. State, 724 So.2d 901 (Miss.1998) as authority for his contention and claims abuse of discretion under Stromas v. State, 618 So.2d 116 (Miss.1993).
¶ 13. As a predicate to admission of tape recordings, the prosecution must prove that the recordings are relevant as defined by M.R.E. 401, as well as authentic as required by M.R.E. 901. Ragin, 724 So.2d at 903 (¶ 3). The recording passes the relevancy test of Rule 401 if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401.
¶ 14. In Stromas, 618 So.2d at 118, the Mississippi Supreme Court considered the admissibility of tape recordings depicting an alleged sale of cocaine. The court held that a tape recording of the alleged drug transaction was relevant pursuant to M.R.E. 401 because the tape's admission made the drug transaction more likely to have taken place. Id. In accordance with the guidance of M.R.E. 401 and the holding *421 of Stromas, we find the tape recording relevant in the present case.
¶ 15. As an additional condition precedent to admissibility, the recording must be proven authentic pursuant to M.R.E. 901. Rule 901 is satisfied if evidence is introduced which is "sufficient to support a finding that the matter in question is what its proponent claims." Ragin, 724 So.2d at 903(¶ 6). The sole predicate to the admission of the tape at trial was the testimony of Jeff Medlin, the undercover agent who wore the body wire, that he had listened to the tape and that what was contained on the tape was an accurate reflection of the drug transaction between himself, the CI, and Jimmy Ratliff. Agent Palmer testified that the tape was actually a dubbed tape. This testimony came after the tape had been admitted into evidence and played to the jury. Of course, Ratliff could have voir dired Medlin during the predicate phase of the admission of the tape, and if it had been revealed at that time that the tape being offered was a dubbed tape, a best evidence based objection would have been in order. Since no such objection was lodged and since agent Medlin was an active participant in the transaction, we find his testimonythat the tape accurately reflected what transpired during the transactionwas sufficient for the trial court to make a finding under Rule 901 that the tape was in fact what the State claimed it was. This issue is without merit.

III. Sufficiency of the evidence.

Standard of Review
¶ 16. The standard of review in challenges to the sufficiency of the evidence is one in which all the evidence is considered in a light most favorable to the verdict. Collier v. State, 711 So.2d 458, 461 (Miss.1998). Matters regarding the weight and credibility of the evidence are to be resolved by the jury. This Court may reverse only where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. Id.
¶ 17. The jury is charged with the responsibility for weighing and considering the evidence and credibility of witnesses. Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983). Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that the evidence, taken in the light most favorable to the verdict, was so lacking that no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Id. Here, the evidence points strongly toward guilt under any view. Ratliff was not entitled to a judgment notwithstanding the verdict. This issue is without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY OF CONVICTION OF THE SALE OF MARIJUANA WITHIN 1500 FEET OF A CHURCH AND SENTENCE OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS THREE YEARS TO RUN CONCURRENT WITH SENTENCE NOW SERVING IN ALCORN CR-97-076, THREE YEARS TO RUN CONSECUTIVE TO SENTENCE NOW SERVING IN CR-97-096 AND FINE OF $6,000 ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ALCORN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.