SOUTHWICK, J.,
for the Court.
¶ 1. Edgar Mosley was convicted after a jury trial for possession of cocaine while also in possession of a firearm and for possession of a firearm by a convicted felon. On appeal he solely challenges the evidence. There was adequate evidence for the convictions. However, because of the novelty of the application, we examine for potential plain error the manner in which three different statutory enhancements were used in sentencing. We affirm in all respects.
FACTS
¶ 2. During an investigation, Indianola police gave a confidential informant twenty *461 dollars to attempt to buy drugs at Edgar Mosley’s house. Officers watched from a car parked across the street as the informant entered and sometime later exited the home. The informant reunited- with the officers and handed them a substance he had acquired in the residence. The substance was found to be cocaine. There is no evidence that Mosley actually sold the drug to the informant. The officers kept the residence under surveillance for two more days, during which time people went in and out of the house “continuously.”
¶ 3. Approximately two days after the informant’s purchase and after securing a search warrant, officers at 6:00 a.m. on March 15, 2004, entered Mosley’s home and found him and his fiancee asleep. They immediately placed the two into custody and began a search of the entire house. The search revealed a handgun lying on a table next to a bed. An officer reached into a pillowcase and found a clear vial containing a substance that was later tested and found to be cocaine. In the pillow, the officer also found approximately $1,200 in cash. There was evidence that the bed in and around which the weapon, money and vial of cocaine were found was used by Mosley.
¶ 4. The officers seized the gun, the drugs, and utility bills bearing Mosley’s name and the residential address. One officer testified that the utility bills were seized to show ownership of the home. When the search was complete, the officers took Mosley to the police station. "While there, an officer informed Mosley of his relevant constitutional rights.
¶ 5. During the booking process, Mosley began to act strangely, mentioning to the officers that he was a professional singer and that the police were conspiring to “take his songs from him.” Mosley then began to sing in the police station. During his singing, Mosley told officers “I’m not a bad guy. Just got to do what I got to do to pay my bills.” Officers testified that Mosley did not appear to be under the influence of drugs or alcohol at the time. Mosley apparently made the statement on his own volition and the officer never asked him what he meant.
¶ 6. Mosley testified that he was a cocaine user, that he and his fiancee were using the cocaine found in the pillowcase, and that the cocaine belonged to them. Mosley said that he would purchase cigars and split them in half with a razor blade and remove its contents. He would replace the contents with marijuana laced with cocaine. Mosley also testified that the money found was in fact his, the result of a tax refund he had recently received. Mosley testified that people frequented his house because it was a “crack house” and that people came to use it to smoke crack in exchange for their giving him drugs. Mosley said that the gun was actually his fiancee’s, which she needed for protection because she lived in a crack house.
¶ 7. Mosley was indicted in December 2004. Count one of the indictment was for possession of at least one tenth of a gram but less than two grams of cocaine with intent to sell while in possession of a firearm. Count two was for possession of a firearm by a convicted felon. On February 17, 2005, a jury found him guilty of possession without the intent to sell. He was sentenced to thirty-two years in prison as to count one, and three years on count two.
¶ 8. Post-trial motions were denied. Mosley’s appeal was deflected here.
DISCUSSION

1. Weight and sufficiency of the evidence

¶ 9. Mosley alleges that his conviction was against the overwhelming weight of *462 the evidence and that he is therefore entitled to a new trial. Alternatively, Mosley alleges that there was insufficient evidence and that his conviction should be reversed and he should be discharged. Both counts had as an element that Mosley was in possession of the firearm found on a bedside table. It is Mosley’s contention that his possession of the weapon was not adequately shown.
¶ 10. When a criminal defendant challenges the sufficiency of the evidence to uphold the conviction, the record evidence is viewed in a light most favorable to the State, or more precisely, in a light most favorable to the decision by the jurors. The credible evidence consistent with guilt must be accepted as true. Among the evidence supporting guilt are placed all favorable inferences that may be reasonably drawn from the physical evidence and testimony. The jurors resolve the factual issues. We do not lightly disturb the results of their deliberations. We may reverse on appeal and discharge the defendant from further prosecution only if as to one or more elements of the offense, the evidence viewed in this manner would not allow reasonable and fair-minded jurors to reach any decision other than to acquit. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 11. A different but related standard applies to reviewing a trial judge’s refusal to grant a new trial on the basis that the overwhelming evidence weighed against guilt. To determine the weight, we test the evidence in a manner that is favorable to the verdict since we assume that the jury made credibility choices consistent with the verdict. We put on one side of the scale all evidence of the defendant’s guilt. Evidence favorable to the defense that must be accepted as true is placed on the opposite side of the scale. We reverse and grant a new trial only if the scale weighted in this manner convinces us that the verdict is so contrary to the evidence that to affirm would be to ignore an unconscionable injustice. McClain, 625 So.2d at 782.
¶ 12. Mosley admitted the gun was in the bedroom that he used and was on a bedside table. The gun was shown to be within arm’s reach of Mosley and was in plain view. Mosley admitted his house was a “crackhouse” and used this as an illustration of why the rightful owner of the weapon — allegedly Mosley’s fiancee— needed to have the gun in the house.
¶ 13. Constructive possession of a firearm is sufficient. As Mosley notes in his brief, the State need only prove dominion and control, not ownership. Sumrall v. State, 758 So.2d 1091, 1096 (Miss.App.2000). The jury instruction that without objection explained constructive possession of the gun required that Mosley have the weapon under his dominion and control, an element of which was that he was aware of the firearm’s presence. The jury in its verdict on the first count made a finding that Mosley possessed the firearm while also in possession of the cocaine.
¶ 14. We conclude that there was adequate evidence of possession of the weapon to withstand Mosely’s challenges both on weight and on sufficiency. We affirm the conviction.

2. Sentence

¶ 15. There was a defense objection to the trial court on the manner in which the judge applied three different statutes on enhancing the sentence, two relating to his status as a prior felon and the last relating to the weapon involved in this drug offense. No issue was made on this appeal about Mosley’s sentence. We have examined the trial judge’s construction for potential plain error. By plain *463 error, we mean “an error so fundamental that it generates a miscarriage of jus-tice_” Morgan v. State, 793 So.2d 615, 617 (Miss.2001). When counsel has not raised an issue that may be this fundamental, “we look to whether the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial.” Cox v. State, 793 So.2d 591, 597 (Miss.2001).
¶ 16. There were four ingredients to the mix that formed Mosley’s sentence:
(1) Possession of one-tenth of a gram but less than two grams of cocaine permitted a sentence of not less than two years nor more than eight, and a fíne of not more than $50,000. Miss.Code Ann. § 41 — 29—139(c)(1)(B) (Rev.2005).
(2) The “maximum term of imprisonment prescribed for such felony” must be given for a defendant such as Mosley who has been twice previously convicted for felonies and sentenced to separate terms of at least one year. Miss.Code Ann. § 99-19-81 (Rev.2000). The base sentence to which any other enhancement applied was therefore eight years. One question is whether this section requires all other enhancements to be applied and maximized since they too might be within the meaning of the “maximum term ... prescribed for such felony.” Since the trial judge maximized all enhancements, whether he was required to do so is not before us.
(3) “Any person who violates ... Section 41-29-139 ..., and has in his possession any firearm, either at the time of the commission of the offense or at the time any arrest is made, may be punished by a fine up to twice that authorized by Section 41-29-139.... ” Miss. Code Ann. § 41-29-152 (Rev.2005). This provision was used to double Mosley’s sentence to sixteen years.
(4)A “person convicted of a second or subsequent offense under this [controlled substances] article may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.” Miss.Code Ann. § 41-29-147 (Rev.2005). With this second discretionary enhancement, the trial judge doubled the previously doubled sentence and gave Mosley a thirty-two year sentence.
¶ 17. In summary, three different enhancements were applied to the sentence as to Count I of the indictment. On the second count involving possession of a firearm by a prior felon, the judge gave a three-year sentence, to run consecutively to the thirty-two year sentence.
¶ 18. We have placed the three enhancement statutes in what we find to be the most natural progression. The trial judge also applied them in that order when actually announcing his sentence, though he earlier had placed them in a somewhat different order.
THE COURT: So it would be [a range of] 4 to 16. [In this observation, the trial judge doubled the 2 to 8 year range for the offense since Mosley was a repeat drug offender before applying the requirement that the maximum sentence be given to a twice-previously convicted felon]. If you then double that pursuant to 41-19-152, it would be 8 to 32. The Court is unsure whether — it would seem to me that the doubled sentence is the lawful sentence, so when you apply the subsequent statute that you would double it again. And I note in here in this headnote the Supreme Court says in [Stromas v. State ],[1] 618 So.2d 116, that *464 the sentence — “the legislature has called for stiff penalties for drug offenders as a matter of public policy.” So, Mr. Mosley, if you would stand for the imposition of the sentence.
(The defendant stood before the court with his attorney, Ms. Thomas.)
THE COURT: The Court imposes a sentence of 32 years in the custody of the Department of Corrections by arriving at that by the maximum of 8 years for the original statutory violation and then doubling it pursuant to 41-29-152 and pursuant — then doubling that pursuant to 41-29-147 to be served as an habitual offender pursuant to 99-19-81, that you serve 3 years in the custody of the Department of Corrections as an habitual offender pursuant to 99-19-81 as to Count Two, consecutive to Count One.
¶ 19. We do not interpret the trial judge’s remarks as a conclusion that he had no discretion under the enhancement statutes. In the reference to the Stromas annotation, he seemed to be using public policy as the reason that he concluded that all the enhancement statutes were intended to be applied in the same case, if applicable. Because of the legislature’s public policy position, he would give the maximum that he thought was available under each of the relevant statutes.
¶ 20. One question that arises is whether the trial judge should have used the enhancements of both Section 99-19-81 and of Section 41-29-147. They both rely on the prior convictions of a defendant to affect the sentence given for a later offense. One section requires the maximum sentence be given in a new prosecution when the defendant has “been convicted twice previously of any felony,” and the prior sentences were to separate terms of at least one year. Miss.Code Ann. § 99-19-81. The other section permits but does not require an increase in the sentence to as much as twice the “otherwise authorized” punishment, when the defendant has been convicted at least once before of an offense under the controlled substances article. Miss.Code Ann. § 41-29-147.
¶ 21. Regardless of whether these statutes should be seen as independent enhancements because of the differences in them or overlapping ones because of the similarities, it is important that the Supreme Court has already determined that using both is appropriate. Tate v. State, 912 So.2d 919, 922-23 & 933 (Miss.2005) (applying both statutes, “the trial court sentenced Tate correctly.”) We, of course, are bound by that conclusion.
¶ 22. When the trial judge announced his sentence decision, he first gave Mosley the maximum under section 41-29-139 of eight years. He then doubled that term because Mosley had a firearm while committing the crime of possessing cocaine. Miss.Code Ann. § 41-29-152. The latter statute permits a sentence of up to twice “that authorized by 41-29-139” to be imposed. That resulting sixteen year sentence was one “otherwise authorized” by law, and therefore it could be doubled again under section 41-29-147 since Mosley had a previous conviction under the controlled substances article.
¶ 23. After this review, we are convinced that the Supreme Court would authorize this multiplicity of sentence enhancements. Our concern under plain error review was that the statutes themselves would not permit such stacking of sentencing multipliers. We only briefly note that constitutional arguments are also unavailing. The trial court cited au *465 thority in which the Mississippi Supreme Court upheld a sixty year sentence for subsequent offender possession of cocaine:
Although this sentence seems quite severe, it is not a “grossly disproportionate” sentence for the crimes that Stro-mas committed. Drug offenses are very serious, and the public has expressed grave concern with the drug problem. The legislature has responded in kind with stiff penalties for drug offenders. It is the legislature’s prerogative, and not this Court’s, to set the length of sentences.
Stromas v. State, 618 So.2d 116, 123 (Miss.1993).
¶ 24. We affirm the conviction and the sentence.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY OF CONVICTION OF COUNT I POSSESSION OF COCAINE WHILE IN POSSESSION OF A FIREARM AND SENTENCE OF THIRTY-TWO YEARS WITHOUT PAROLE AND COUNT II POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE YEARS WITHOUT PAROLE ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.

. The judge properly quoted the text of the annotation from the bound Mississippi Code, *464 which referred to the case as Campbell v. Campbell. The writers of the annotation erred, as Campbell is the preceding case on that page. See Stromas v. State, 618 So.2d 116 (Miss.1993); cf. Judicial Decisions 1, following Miss.Code Ann. 41-29-147 (Rev.2005).