RANDOLPH, Justice,
dissenting:
¶ 28. I would affirm the decisions of a Winston County jury, a Winston County circuit judge and a unanimous Court of Appeals. The issues raised on appeal are {verbatim et literatim):
(1) Whether the mandatory sentence of life imprisonment without possibility of parole for possession of a trace amount of cocaine without considering the extenuating circumstances such as the proportionality of the type of conviction compared to the amount of cocaine petitioner was accused of having possession thereof and the fact that the petitioner has never been convicted as a drug trafficker constitutes cruel and unusual punishment prohibited under the Eighth Amendment;
and
(2) Whether the trial court erred when it failed to grant appellant’s motion J.N.O.V. or, in the alternative, a new trial, when the State failed to prove by legally sufficient evidence beyond a reasonable doubt all the essential elements of knowing and felonious possession of a trace amount of cocaine on his clothing and the jury returned a verdict of guilty on the meager amount of evidence where the substance in question is so small that it cannot be seen.
The Court of Appeals found no error. Hudson v. State, 31 So.3d 1 (Miss.Ct.App.2009). The majority, in reversing and rendering the petitioner’s conviction, orders that the jury verdict must be set aside, opining that the evidence was insufficient to convict, and does not address issue one raised by the petitioner. (Maj. Op. at ¶ 8).
Proportionality of Sentence
¶ 29. The Court of Appeals found no merit in Hudson’s constitutional argument. Id. at 4. I would affirm, as “this Court ... [has] repeatedly held that where a sentence is within the prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual.” Stromas v. State, 618 So.2d 116, 123-24 (Miss.1993). The Court of Appeals correctly found that “Hudson’s sentence ... did not arise solely from his conviction of possession of cocaine. Hudson was sentenced to life without parole for his status as a habitual offender with a record as a violent offender.” Hudson, 31 So.3d at 4. Hudson has five previous convictions, two of which, armed robbery and aggravated assault of a law enforcement officer, are crimes of violence. Hudson has spent more than eighteen of his last thirty-two years in the state prison system. In 1978, Hudson was convicted separately of aggravated assault on a law enforcement officer in October, possession of heroin in September, and felony shoplifting in April, and was given prison sentences of one, two, and five years by the circuit courts of Winston, Lauderdale and Jones Counties. Howev *1209 er, he served less than three years. Freedom was short-lived, for in 1982 Hudson was convicted of armed robbery in Laud-erdale County and received a sentence of thirty years. He served more than fourteen years of that sentence. Hudson’s next conviction came in 2005 in Winston County. Hudson was convicted of felony DUI and received a sentence of five years, serving only one year and two months.
¶ 30. Our statute mandates a sentence of life imprisonment "without the possibility of parole for “[ejvery person convicted in this state of a felony who shall have been convicted twice previously of any felony ... and who shall have ... served separate terms of one (1) year or more ... and where any one (1) of such felonies shall have been a crime of violence....” Miss. Code Ann. § 99-19-83 (Rev.2007). This Court has recognized that “it is properly within the purview of the Legislature to determine the range of sentences, enunciating our citizens’ determination of the social impact of harmful behavior.” Davis v. State, 724 So.2d 342, 344 (Miss.1998). Regarding drug offenses in particular, the “the public has expressed grave concern [and] ... [tjhe legislature has responded in kind with stiff penalties.... ” Stromas v. State, 618 So.2d 116, 123 (Miss.1993). The will of the people is expressed through their representatives. I would not only affirm the judgment, for the reasons stated infra, but also the sentence, for our statutes and caselaw confirm that the penalty is not grossly disproportional.
Sufficiency of Evidence
¶ 31. The basis of my dissent necessarily focuses on the evidence presented to the jury, and the instructions of law given by the trial judge. I remain in accord with the time-respected principle that a “rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Dilworth v. State, 909 So.2d 731, 736 (Miss.2005) (quoting Jackson v. Va., 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Our Court is required to view “the evidence in the light most favorable to the prosecution.” Id. It is not the function of an appellate court to create or permit inferences that one or more of its members might draw from evidence to run contrary to the well-reasoned judgment of a jury. See Seeling v. State, 844 So.2d 439, 443 (Miss.2003) (“[Tjhis Court ... gives the State the benefit of all favorable inferences that may reasonably be drawn from the evidence”).
¶ 32. The arresting officer, Estes, related to the jury his observation of Vincent’s physical demeanor at the traffic stop. He testified of Vincent’s “extreme and unnecessary movement.” He testified that Vincent “kept looking back toward my position and at one time reached back in the back seat of the car.... He ... turned all the way around in the seat and reached back....” He further testified that a bag of drugs was found “laying on top of a coat in plain view.” Estes related that “[tjhe back seat was full of junk .... clothes, a spare tire, a heater.... ”
¶ 33. The narcotics detective, McWhirter, testified regarding Vincent’s lack of mental acuity. “He seemed to me to be impaired .... having a hard time talking. I was having a hard time understanding a lot of what he was saying.” When asked why he believed Vincent was impaired, McWhirter replied, “The demeanor that he was in, his voice, ... his speech, slurred, and I had had conversations with him before that were not that way.”
¶ 34. A pat down of Vincent failed to disclose any controlled substances visible to the naked eye. However, after finding evidence of drugs in the car, including mai’ijuana in the ash tray; marijuana in a cigarette package in Hillute’s pocket; marijuana, ecstacy and cocaine in the bag behind the front seat (the same area where *1210 Vincent was observed reaching), the petitioner was arrested.
¶ 35. There was evidence of drugs other than the cocaine in, as opposed to on, Vincent’s clothes. Cocaine was found inside the pockets of two different garments that Vincent was wearing. Additionally, marijuana was found in one of Vincent’s pockets. Brandy Goodman, a forensic specialist “in the field of drug identification,” was called to testify. She has been employed by the Mississippi Crime Laboratory for more than eight years and has a primary duty to “analyze substances submitted by law enforcement personnel for the presence or absence of a controlled substance.” She has a Bachelor of Science degree with a major in molecular biology and a minor in chemistry. She earned a medical-technology certificate through the American Society of Clinical Pathology, and is certified by the American Board of Criminalistics as a technical specialist in drug identification. She was tendered as an expert witness in the field of drug analysis without objection by the petitioner. Goodman testified that she had used a gas chromatograph mass spectrometer and had run a standard to verify the results. What she found in the pockets was (1) cocaine and marijuana in Vincent’s right front pants pocket; (2) cocaine in Vincent’s right shirt pocket; (3) a substance for which the data was insufficient to identify in Vincent’s left front pants pocket and right back pants pocket, “which means the instrument picked up possibly something there, but there was not enough scientific data to verify”; and (4) no controlled substance in Vincent’s left shirt pocket, left back pants pocket, and right front small pants pocket. Goodman further testified that “[a] trace amount is an amount that I can physically see that there is something there, but it is not a weighable amount of substance.” She testified that, although it is common for a portion of the drugs to be destroyed in the testing process, she was able to save some of the cocaine in vials, which were admitted into evidence and “published” to the jury. Thus, the jury had before it her testimony and two vials containing the remainder of the cocaine that had come from Vincent’s pants and shirt.
¶ 36. The majority opines that “[t]he State found it necessary to utilize the ‘constructive possession’ rationale regarding the drugs in the bag ... but Vincent was acquitted of those charges. Thus, this appeal does not involve an issue of ‘constructive’ possession.” (Maj. Op. at ¶ 12). This finding ignores that the jury rightly (based on the evidence) was given a constructive-possession instruction, which covered all four counts without distinction. This same instruction was proposed by the defendant. It incorporated a definition of constructive possession as found in Dixon v. State, 953 So.2d 1108, 1112-13 (Miss.2007). The State withdrew its proposed possession instruction. The instruction given to the jury was as follows:
The Court instructs the jury that to constitute a possession, there must be sufficient facts to warrant a finding that Vincent Hudson was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. Constructive possession may be shown by establishing that the controlled substance was subject to the defendant’s dominion and control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
The majority’s disclaimer that this appeal does not involve an issue of “constructive possession” does not conform to the trial court’s instruction and juror consideration of same. It cannot be honestly debated that Vincent’s clothing, which contained the controlled substance, was not subject *1211 to his dominion and control. Thus, constructive possession was an issue before the trial court, and thus, necessarily before this Court.
¶ 87. The majority states that, because the State relied on constructive possession of the bag of drugs for which Vincent was acquitted; thus, “as far as this Court is concerned, he did not ‘possess’ [the drugs].” (Maj. Op. at ¶ 24, note 8). One can only state with a measure of certainty that the jury found that at least one element of possession of the drugs in the bag was not proven by the State beyond a reasonable doubt. However, an acquittal on those charges does not preclude consideration of the presence of all drugs, given the totality of circumstances surrounding his arrest and, specifically, for the undisputed evidence that drugs were determined to be on his person. The bag of drugs was presented as evidence. It must be viewed in like manner as any other evidence presented, with the jury entitled to give such weight to all evidence as only they deem appropriate, be it great or of no significance. See Dilworth, 909 So.2d at 736. We are without the constitutional or statutory authority to disregard properly admitted evidence, no matter how slight we deem its evidentiary value. The majority states that “conscious intent to possess” is a necessary element. (Maj. Op. at ¶ 11). However, intent cannot be seen. It must be inferred, making it a classic jury issue. The jury had every right to infer, based on the totality of circumstances, that Vincent had “consciously exercised control over” the drugs scientifically determined (without objection) to be in his pockets. See Dixon, 953 So.2d at 1113.
¶ 38. The majority cites two cases in which the prosecution satisfied its burden of proving possession of a controlled substance. See Hampton v. State, 498 So.2d 384 (Miss.1986); Nance v. State, 948 So.2d 459 (Miss.Ct.App.2007). In Hampton, the arresting officer testified that Hampton was impaired, just as the narcotics officer did here. Hampton, 498 So.2d at 385. No drugs were identified on Hampton at the time of arrest, but a syringe containing “some clear liquid” was found upon analysis at the crime lab to contain a trace amount of a controlled substance. Id. The drug amount was so small that nothing was left over after the analysis. Id. Here, the jury was presented with more. Vials of trace cocaine were offered into evidence and published to the jury, unlike in Hampton.
¶ 39. Nance was not a trace-evidence case. Nance, 948 So.2d at 460. A white powdery substance was found in a sandwich bag at the police station. Id. Nance’s conviction was affirmed without evidence of impairment as in this case. However, all three cases offer a common thread, i.e., an object (syringe, sandwich bag, pockets of clothing) was determined by lab analysis to hold a small amount of a controlled substance. Nance’s and Hampton’s convictions were affirmed. See Hampton, 498 So.2d at 387; Nance, 948 So.2d at 461. Accordingly, those cases provide no prece-dential support to reverse petitioner’s conviction.
¶ 40. The State summed up the proof as follows:
If you found trace amounts of cocaine in clothes, is that enough to convict somebody? No. But you find trace amounts of cocaine in somebody’s clothes and you found that person was also right by a bunch of other drugs and the same kind of drugs, and you find that the officer saw the person put something in the area where he put those drugs; you find that the person also has trace amounts, that he was moving around, that he was acting like he was intoxicated, and you put all those things together. You have got the whole picture, and then that is enough to make a reasonable inference *1212 and look at the totality of the circumstances and to find him guilty.
This was a fair summary of the facts presented to the jury. The argument was couched to match the instruction offered. Thus, the jury’s ultimate conclusion that Hudson had possessed drugs by having them in his dominion and control was supported, both factually and legally.
¶ 41. In reviewing a decision to deny a motion for directed verdict or judgment notwithstanding the verdict, it is not enough that we might have had a reasonable doubt, but “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Dilworth, 909 So.2d at 736. Applying this standard, I would affirm, and not substitute my take on the evidence (or regrettably, disregard evidence) to overrule the decision of a constitutionally appointed finder of fact, the jury.
CHANDLER AND PIERCE, JJ, JOIN THIS OPINION.