# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-01343-SCT

*MATHEW JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/1997 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. MILLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:   SCOTT STUART |
| DISTRICT ATTORNEY: | DUNN O. LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/12/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: 09/02/1999 | |

**BEFORE PRATHER, C.J., BANKS AND SMITH, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Mathew Jones was tried and convicted in the Lincoln County Circuit Court for Count I, delivery of cocaine and, Count II, possession of cocaine. He was subsequently sentenced as an habitual criminal to sixty years in prison on Count I and six years in prison on Count II. Jones appeals, and raises the following issues for consideration by this Court:

> **A. Whether the evidence is insufficient to support the conviction pursuant to the indictment and relevant law, such that the lower court erred in not granting a directed verdict pursuant to the Mississippi Rules of Procedure?**

> **B. Whether the trial court committed reversible error by permitting the prosecutor to elicit testimony of a separate and distinct crime, depriving Mathew Jones of due process under the federal and state Constitutions and denying Jones a fundamentally fair trial?**

> **C. Whether the confidential informant, Andrea Jones, was a reliable witness and that in**

**violation of appellant's basic rights said informant's testimony was admitted?**

**D. Whether the lower court judge erred in its failure to recuse and remove itself from this case based on bias?**

**E. Whether the lower court judge erred in admitting evidence from an illegal search warrant and wrongfully admitted the audiotape and illegal substance into evidence?**

**F. Whether the lower court acted improperly by sentencing appellant to a mandatory sixty-six years in the custody of the Mississippi Department of Corrections?**

¶2. This Court finds that the issues raised by Jones are without merit. Accordingly, the judgment of the trial court is affirmed.

## STATEMENT OF THE FACTS

¶3. The informant in this case, Andrea Jones (hereinafter "the informant"), testified that he and Mathew Jones (hereinafter "Jones") cut and wrapped crack cocaine at Jones' home on June 8, 1997. Jones gave the informant a large quantity of cocaine, with instructions to sell it. The informant, against whom other charges were pending[(1)], contacted his attorney. The attorney contacted the authorities. As a result, at 10:00 p.m., on June 10, 1997, the informant met with Officers Crieg Oster (a veteran Unit Commander for the Southwest Narcotics Enforcement Unit and member of the Brookhaven Police Department) and Gary Vanderslice (a member of the Lincoln County Sheriff's Department and the Southwest Narcotics Enforcement Unit).

¶4. At that meeting, the informant gave Oster and Vanderslice approximately 14.39 grams of crack cocaine, comprised of forty-five rocks that had been individually sealed. The informant stated that he had received the cocaine from Jones.

¶5. The informant testified that he had not disturbed the contents of the package, from the time he received it from Jones, until he gave it to the authorities. He had, however, removed the package from a foil wrapper and placed it in a plastic bag, because the foil was tearing.

¶6. The informant was searched, equipped with a body transmitter and cassette recorder, and given $900 in official funds. At approximately 11:05 p.m., the informant left the officers' presence on foot, while the officers maintained audio surveillance. The informant was to give Mathew Jones $900 for the package of cocaine.

¶7. At approximately 11:11 p.m., the informant arrived at Jones' home. Officers Vanderslice and Oster then heard the informant talking with Jones for approximately twenty-eight minutes; the officers recognized both voices. The officers also heard the voices of an unidentified male and female. The informant testified that these voices

belonged to Robert "Little Robert" Allen, Jr., and Annette Richardson Jones.[2]

¶8. Jones asked "You sold it all?" -- referring to the rocks of cocaine. The informant asked, "So you don't know when you're going to have no more?" -- to find out when Jones would have more cocaine. Jones indicated that "it was too dark to go get it from back in his yard." Jones also stated that, when he bought from someone else, he lost money. Jones further stated that he once received a $100 bill (presumably for crack cocaine), and that he immediately changed it, in case it was "marked". In addition, Jones indicated that he would have given the informant $200, if the informant had brought $1,000 for the total package.

¶9. Agent Vanderslice listened contemporaneously to the entire conversation between the informant and Jones; Agent Oster heard most of the conversation, but was also engaged in conversation with Captain Bobby Bell, a veteran of the Brookhaven Police Department[3]. Captain Bell testified that he heard portions of the conversation between the informant and Jones, which indicated that cocaine could be found in Jones' home.[4]

¶10. The informant returned to the officers. Several officers went to Jones' residence, where they arrived at 11:39 that evening. The occupants of the residence (including Jones and his wife) were detained, while a search warrant was obtained.

¶11. The search warrant was executed at approximately 1:30 a.m., June 11, 1997. The officers discovered $800 of the official funds, which had been given to the informant earlier that evening. The agents also seized: one napkin with plastic wrap that contained cocaine residue (which was found in a flower pot in Jones' bedroom); one rifle; one Uniden Bearcat Scanner; one shotgun; three boxes of sandwich bags; four butane lighters; and, two boxes of razor blades.[5] Jones was then arrested.

¶12. After the house was secure, Vanderslice met the informant and retrieved the body transmitter and recorder from the informant. The informant testified that he had not touched the tape. In addition, the informant gave Agent Vanderslice $100 of the official funds, which had been issued previously that evening. The tape-recorded conversation between the informant and Jones indicated that the $100 was payment from Jones for selling the drugs.

¶13. The informant denied that he borrowed money from or owed money to Jones. However, three of Jones' friends (two of whom admitted to having previously used illegal drugs) testified that, in late May or early June,1997, they saw Jones give the informant money at the informant's request.

¶14. At least three witnesses testified that the informant was not a truthful person. For example, Officer Arlustra Henderson, the Brookhaven Chief of Police, testified that the

informant was not truthful in an interview on a previous case.

¶15. The informant hoped that, by cooperating with the authorities, he would receive a reduced sentence on a pending drug charge. However, the officers did not mention or promise a reduced sentence, and "[n]o deal was made." The informant also knew that he had to give the police someone else's name, in order to stay out of prison.

## LEGAL ANALYSIS

**A. Whether the evidence is insufficient to support the conviction pursuant to the indictment and relevant law, such that the lower court erred in not granting a directed verdict pursuant to the Mississippi Rules of Procedure?**

¶16. Jones first argues that he should have been granted a directed verdict.

Requests for a directed verdict and motions JNOV implicate the sufficiency of the evidence. The standard of review for the legal sufficiency of the evidence is well-settled:

[W]e must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for the prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Gleeton v. State*, 716 So. 2d 1083, 1087 (Miss. 1998) (citations omitted).

¶17. Jones argues that this case is based solely on the testimony of the confidential informant and circumstantial evidence. Given the eye-witness testimony and the audiotape, Jones' argument that this is a circumstantial evidence case is clearly specious. It is true, however, that the primary evidence on the delivery charge in this case came from the informant.[6] It is also true that the informant's credibility was attacked.

¶18. Jones argues that the informant's testimony amounted to uncorroborated statements of an accomplice.

This Court has long held that the testimony of an accomplice must be viewed with "great caution and suspicion. Where it is uncorroborated, it must also be reasonable, not improbable, self-contradictory or substantially impeached." *Jones*

*v. State*, 368 So.2d 1265, 1267 (Miss.1979) (and numerous cases cited therein); *See also Derden v. State*, 522 So.2d 752, 754 (Miss.1988); *Winters v. State*, 449 So.2d 766, 771 (Miss.1984); *Parker v. State*, 378 So.2d 662, 663 (Miss.1980). If the uncorroborated accomplice testimony does not suffer from these infirmities, such testimony may be found to adequately support a conviction. *See, e.g., Oates v. State*, 421 So.2d 1025, 1031 (Miss.1982); *Catchings v. State*, 394 So.2d 869, 870 (Miss.1981); *Jones v. State*, 381 So.2d 983, 988 (Miss.1980). The trial court, in its discretion, may grant a cautionary jury instruction concerning accomplice testimony. This discretion is not absolute however, and may be abused if no cautionary instruction was given, and (1) the witness was, in fact, an accomplice, and, (2) the testimony was not corroborated. *Derden*, 522 So.2d at 754.

*Strahan v. State*, 729 So. 2d 800, 805 (Miss. 1998) (quoting *Johns v. State*, 592 So.2d 86, 88-89 (Miss.1991)).

¶19. The record reflects that the trial judge refused defense counsel's proposed cautionary instruction, and ruled that there was "no evidence that [the informant] was an accomplice in the possession or the delivery." Indeed, there is nothing in the record to indicate that the informant was charged as an accomplice in this case.

¶20. Assuming, *arguendo*, that the informant could be considered an accomplice, his testimony was corroborated (a) by the large packet of cocaine given to the authorities, and (b) by the tape, which indicates that Jones paid the informant for selling the large packet of cocaine. "'[T]he uncorroborated testimony of an accomplice may be sufficient to convict an accused. Where there is slight corroborative evidence, the accomplice's testimony is likewise sufficient to sustain the verdict.'" *Ballenger v. State*, 667 So. 2d 1242, 1253 (Miss. 1995) (quoting *Mason v. State*, 429 So. 2d 569, 571 (Miss. 1983)). Thus, given this authority, the corroborative evidence in this case is sufficient to support the conviction.

¶21. Jones also argues that the State failed to dispute the alibi evidence in this case, which was given by Darlene Graham, Jones' sister-in-law. Basically, Jones is arguing that his witnesses were more convincing than the State's witnesses. However, as stated earlier, "[t]he prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." *Collier v. State*, 711 So. 2d 458, 461(Miss. 1998). Therefore, Jones' argument on this point is without merit.

**B. Whether the trial court committed reversible error by permitting the prosecutor to elicit testimony of a separate and distinct crime, depriving Mathew Jones of due process under the federal and state Constitutions**

**and denying Jones a fundamentally fair trial?**

¶22. Jones also argues that error occurred when the informant was allowed to testify that "[the informant] and Mathew Jones possessed and packaged cocaine on a separate date alleged in indictment. The trial court's failure to sustain the objection to the prior act, allowing evidence of commission of another crime, was error." This assertion of error is not supported by the record. Therefore, Jones' argument is without merit.

> **C. Whether the confidential informant, Andrea Jones, was a reliable witness and that in violation of appellant's basic rights said informant's testimony was admitted?**

¶23. Jones further argues that the informant's testimony was unreliable and that the trial court erred by admitting it. Jones cites no authority for this argument. "'The appellant bears the burden on appeal, and we will entertain no claims for which no supporting authority has been cited.'" *Cavett v. State*, 717 So. 2d 722, 724 (Miss. 1998) (quoting *Beckwith v. State*, 707 So.2d 547, 597 (Miss.1997)).

¶24. Even if this argument were not procedurally barred, it is without merit. Jones basically claims that Officer Arlustra Henderson, the Brookhaven Chief of Police, was not allowed to testify regarding remarks made by the informant, which were relevant to the informant's credibility.

¶25. In fact, defense counsel did question Chief Henderson, and the following exchange occurred:

> Q. Now, do you know [the informant]?
>
> A. I do.
>
> Q. And do you know the reputation as far as [the informant] for truth and veracity?
>
> A. I had dealing with [the informant] on one occasion concerning a felony.
>
> Q. And as far as him being truthful?
>
> A. He wasn't truthful to me on that case that I had the opportunity to interview him on.

Thus, Jones' argument (that Henderson's testimony on this point was erroneously excluded) appears to be contradicted by the record.

¶26. Furthermore, "an assignment of error regarding exclusion of evidence may not be based on a ruling that admits or excludes evidence unless a substantial right of the

party is affected . . . ". ***Harris v. State***, 731 So. 2d 1125, 1131 (Miss. 1999) (citing ***Cooper v. State***, 628 So. 2d 1371, 1374 (Miss. 1993)). ***See also*** M.R.E. 103 (a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . "). Jones has not demonstrated any effect on a substantial right.

¶27. In addition, Jones argues that all the informant's testimony should have been excluded as unreliable. As stated earlier, there were attacks on the informant's credibility and motive for testifying. All of this was presented to the jury for consideration. "'The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused.'" ***Johnson v. State***, 655 So. 2d 37, 42 (Miss. 1995) (quoting ***Roberson v. State***, 595 So.2d 1310, 1315 (Miss.1992)). The informant was the primary witness against Jones on the delivery charge. His testimony was corroborated by the package of cocaine and the audiotape. Thus, as discussed earlier, the admission of the informant's testimony was not an abuse of discretion. For these reasons, this assignment of error is without merit.

### D. Whether the lower court judge erred in its failure to recuse and remove itself from this case based on bias?

¶28. Jones next argues that the trial judge should have recused in this case, due to tension between the trial judge and the defense attorney. Jones contends the following:[7]

[The circuit judge's] actions at trial did not exhibit the fairness and impartiality required by law. The lower court judge improperly refused to hear defendant's motions, excluded testimony that should have been admitted. He allowed the prosecution to amend indictment, immediately prior to trial limited appellant's time in giving the opening statement and rudely ordered appellant's attorney to shut up in open court the circuit judge's behavior toward defense counsel was antagonistic throughout the trial.

¶29. Jones does not cite to the record on any of these assertions. An example of how the trial judge "improperly refused to hear defendant's motions" could not be found. Furthermore, to the extent that Jones has raised specific evidentiary rulings, those instances have been addressed.

¶30. Jones also argues that the trial judge demonstrated bias by allowing the amendment of the indictment. According to recent caselaw, the amendment of the indictment was proper. ***See Burrell v. State***, 726 So. 2d 160, 162 (Miss. 1998). ***See also*** Uniform Circuit and County Court Rule 7.09 (which provides, in pertinent part, that "[a]ll indictments may be amended as to form but not as to the substance of the

offense charged. Indictments may also be amended to charge the defendant as an habitual offender . . .").

¶31. In addition, the record reflects that the trial judge limited both sides to ten minutes on opening arguments -- not just the defense. The record also reflects that no contemporaneous objection was made to this limitation of oral arguments. As such, consideration of this issue is precluded. *See Russell v. State*, 670 So. 2d 816, 826 (Miss. 1995) ("This Court will not address errors on appeal where the defendant failed to raise a contemporaneous objection at trial."). Furthermore, the length of opening arguments is clearly a matter within the trial judge's discretion. *See generally Walker v. State*, 671 So. 2d 581, 608 (Miss. 1995) ("'Generally the amount of time granted for closing argument rests within the sound discretion of the trial judge.'") (quoting *Willie v. State*, 585 So. 2d 660, 675 (Miss. 1991)). *See also [Conner v. State, 684 So. 2d 608, 614 (Miss. 1996)](#)* (trial judge does not abuse discretion, where defendant "fails to suggest how a lengthier argument might have changed the outcome of the case.").

¶32. The record reflects that the trial judge did, in fact, instruct the defense attorney to "shut up", but it was outside of the presence of the jury, and after defense counsel's repeated objection to the same issue. Admittedly, the use of the phrase "shut up" is impolite and is poor courtroom decorum. However,

> . . . this Court has acknowledged that the actions of a trial judge can be bad enough to prejudice the jury. *See Waldrop v. State*, 506 So.2d 273, 276 (Miss.1987) (trial judge understandably "lost his cool" in front of jury). However, the disputed interactions in the case *sub judice* were limited to arguments held outside the presence of the jury. Therefore, [the appellant's] argument that the trial judge's demeanor resulted in an unfair trial is without merit.

*[Cavett](#)*, 717 So. 2d at 725.

¶33. In support of this argument, Jones cites *Davis v. Neshoba County Gen. Hosp.*, 611 So. 2d 904 (Miss. 1992). That case sets forth the proper standard for reviewing the denial of a motion to recuse. The question to be asked is, whether, a reasonable person, with knowledge of all the circumstances, would harbor doubts about the judge's impartiality. *Davis*, 611 So. 2d at 905. "Keeping in mind the maxim that a presumption of impartiality exists, this Court reviews a judge's refusal to recuse him- or herself via application of a manifest-error standard." *Id.* Jones has produced no evidence to rebut the presumption of impartiality, or to demonstrate manifest error on the part of the trial judge. Therefore, this issue is without merit.

### E. Whether the lower court judge erred in admitting evidence from an illegal search warrant and wrongfully admitted the audiotape and illegal

**substance into evidence?**

¶34. Jones next argues that the chain of custody was incomplete for the large package of crack cocaine admitted in this case. Jones further argues that the audiotape was not properly authenticated, prior to being admitted in this case. His arguments are primarily based on his contention that the testimony of the informant should be wholly disregarded as unreliable. The admissibility of the informant's testimony has already been addressed.

¶35. Neither the transcript from the suppression hearing nor the actual exhibits are included in the record on appeal. However, the record reflects that both these items were admitted over defense counsel's objection.

¶36. With regard to the chain of custody on the cocaine, Jones' basic argument is that no one saw him give the cocaine to the informant. Therefore, Jones contends that no one can prove that the cocaine did not come from the informant, or, that the informant did not tamper with the cocaine.

> This Court has held that the test of whether there has been a proper showing of the chain of possession of evidence is whether there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence. *Gibson v. State*, 503 So.2d 230, 234 (Miss.1987); *Barnette v. State*, 478 So.2d 800, 804 (Miss.1985); *Lambert v. State*, 462 So.2d 308, 312 (Miss.1984); *Morris v. State*, 436 So.2d 1381, 1388 (Miss.1983); *Harrison v. State*, 307 So.2d 557, 561 (Miss.1975); *Nix v. State*, 276 So.2d 652, 653 (Miss.1973); *Grady v. State*, 274 So.2d 141, 143 (Miss.1973).
>
> The State produced the witnesses to sufficiently satisfy the chain of custody. However, "the burden to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant." *Hemphill v. State*, 566 So.2d 207, 208 (Miss.1990) (citing *Nix*, 276 So.2d at 653) (emphasis added). Additionally, "[m]atters regarding the chain of custody of evidence are largely left to the discretion of the trial judge, and 'unless this judicial discretion has been so abused as to be prejudicial to the defendant, this Court will not reverse the ruling of the trial court.'" *Doby v. State*, 532 So.2d 584, 588 (Miss.1988) (quoting *Morris*, 436 So.2d at 1388).

*White v. State*, 722 So. 2d 1242, 1244-45 (Miss. 1998).

¶37. The informant testified that he removed the foil from around the package and placed its contents in a plastic bag. However, the informant testified that he did not tamper with the contents of the bag (forty-five rocks cocaine).

¶38. Furthermore, the defendant was recorded asking the informant if all the drugs were sold. The defendant also paid the informant for selling the drugs. Therefore, any argument with regard to the chain of custody of the drugs would appear to be specious. Thus, Jones has failed to meet his burden of proving that tampering occurred, such that the trial judge abused his discretion in admitting the cocaine.

¶39. Jones also argues that the audiotape that was admitted in this case was not properly authenticated. Basically, Jones contends that the failure to properly identify the voices on the tape renders the tape inadmissible. This argument is contradictory to the record. The informant identified the four people on the tape: himself, Jones, Jones' wife, and Robert "Little Robert" Allen. In addition, both officers Oster and Vanderslice identified the voices of the informant and the appellant. For this reason, Jones' argument on this point is specious.

> As [a] condition precedent to admissibility, the recording must be proven authentic pursuant to Miss. R. Evid. 901. Rule 901 is satisfied if evidence is introduced which is "sufficient to support a finding that the matter in question is what its proponent claims."
>
> * * *
>
> Whether the evidence presented satisfies . . . [Rule] 901 of the Mississippi Rules of Evidence is a matter left to the discretion of the trial judge. Miss. R. Evid. 104(a). His decision will be upheld unless it can be shown that he abused his discretion. *Stromas*, 618 So.2d at 119 (citing *Butler*, 592 So.2d at 986).

*Ragin v. State*, 724 So. 2d 901, 903 (Miss. 1998). Based on the testimony of the informant and the investigating officers, there was sufficient evidence to show that the recording was what the State claimed it to be. For this reason, the trial judge did not abuse his discretion in admitting the audiotape.

> **F. Whether the lower court acted improperly by sentencing appellant to a mandatory sixty-six years in the custody of the Mississippi Department of Corrections?**

¶40. Jones' final argument is that the trial judge erred by sentencing him as an habitual offender, with enhanced punishment, to sixty years in prison on Count I and six years in prison on Count II. The record reflects that Jones was sentenced to thirty years on Count I and three years on Count II (pursuant to the sentences outlined in Miss Code Ann. § 41-29-139). Those sentences were then doubled (pursuant to Miss. Code Ann § 41-29-147, which allows for such enhancement for repeat offenders). Finally, as an habitual offender under Miss. Code Ann. § 99-19-81, Jones is ineligible for parole. That is, Jones' total sentence is sixty-six years in prison, without parole. Jones argues

that this sentence is cruel and unusual punishment, and is in violation of the Eighth Amendment.

¶41. Traditionally, "[t]his Court has found that sentencing, 'is within the discretion of the trial court, and this Court will not review the sentence, if it is within the limits prescribed by statute.'" *Berry v. State*, 722 So. 2d 706, 707 (Miss. 1998) (quoting *Reynolds v. State*, 585 So.2d 753, 756 (Miss.1991)).

> As a general rule, a sentence will not disturbed on appeal so long as it does not exceed the maximum term allowed by statute. *Wallace v. State*, 607 So.2d 1184, 1188 (Miss.1992); *Fleming v. State*, 604 So.2d 280, 302 (Miss.1992); *Reed v. State*, 536 So.2d 1336, 1339 (Miss.1988); *Corley v. State*, 536 So.2d 1314, 1319 (Miss.1988). However, where a sentence is "grossly disproportionate" to the crime committed, the sentence is subject to attack on the grounds that it violates the Eighth Amendment prohibition of cruel and unusual punishment. *Wallace*, 607 So.2d at 1188; *Fleming*, 604 So.2d at 302.
>
> In *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the U.S. Supreme Court articulated a three-prong test for evaluating proportionality. The elements include:
>
> (1) The gravity of the offense and the harshness of the penalty;
>
> (2) Comparison of the sentence with sentences imposed on other criminals in the same jurisdiction; and
>
> (3) Comparison of sentences imposed in other jurisdictions for commission of the same crime with the sentence imposed in this case.
>
> *Solem*, 463 U.S. at 292, 103 S.Ct. at 3011.

*Stromas v. State*, 618 So. 2d 116, 122-23 (Miss. 1993).

¶42. Jones was convicted of delivering a large quantity of cocaine (forty-five rocks) and of possession of a small amount of residue. There is nothing in the record regarding the other two factors of the *Solem* test. Nonetheless, given the gravity of Jones' crimes alone, the sentence is not considered grossly disproportionate. *See Stromas*, 618 So. 2d at 123 ("Declaring a sentence violative of the Eighth Amendment to the U.S. Constitution carries a heavy burden and only in rare cases should this Court make such a finding.")

¶43. In support of his argument, Jones cites *Davis v. State*, in which this Court considered the mandatory sixty-year sentence of a young mother, who was convicted of selling two rocks of cocaine within 1,500 feet of a church building. *See Davis v.*

*State*, 724 So. 2d 342, 343-46 (Miss. 1998). This Court remanded the case for reconsideration of the sentence, and noted that: (a) there was little in the record to explain the sentence; (b) the defendant was not being tried as an habitual offender; (c) the trial judge gave no explanation for imposing the maximum sentence; and, (d) the trial judge did not have the benefit of a pre-sentencing investigation. *Id.* at 345 ("Even as to those circumstances for which the statutes provide mandatory sentences, the punishment must be weighed against the prohibition imposed in the Eighth Amendment to the United States Constitution against cruel and unusual punishment.").

¶44. The case *sub judice* is easily distinguished from *Davis*. Jones was convicted of delivery of a large quantity of cocaine (forty-five rocks), and he received a separate sentencing hearing. In addition, Jones was charged as an habitual offender, and the trial judge was well aware of Jones' criminal history. For these reasons, the sentence was proper. *See Stromas*, 618 So.2d at 123 (where defendant was convicted of selling a small amount of cocaine received sixty-year sentence as a repeat offender, this Court held that the sentence was not "grossly disproportionate.").

## CONCLUSION

¶45. The issues raised by Jones are without merit. Therefore, the judgment of the trial court is affirmed.

¶46. **COUNT I: CONVICTION OF POSSESSION OF UNLAWFUL DELIVERY OF COCAINE AND SENTENCED TO SERVE A TERM OF SIXTY (60) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**COUNT II: CONVICTION OF POSSESSION OF COCAINE AND SENTENCED TO SERVE A TERM OF SIX (6) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**APPELLANT SENTENCED AS AN HABITUAL OFFENDER UNDER MISS. CODE ANN. § 99-19-81 WITH ENHANCED PUNISHMENT UNDER MISS. CODE ANN. § 41-29-147, FIFTEEN (15) YEARS AND PAY COURT COSTS.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. The informant was under a suspended sentence for a burglary charge. In addition, the informant had been arrested for distribution of cocaine but had not been

sentenced. The informant knew that cocaine distribution violated his probation on the burglary charge. Prior to the trial *sub judice*, the informant pled guilty to the distribution of cocaine charge, and his sentence was suspended.

2. Annette Richardson was Jones' girlfriend at the time of the transaction, but they were married prior to trial.

3. Bell had known the informant for several years, and had no reason to believe that the informant was lying.

4. However, the word "cocaine" was never mentioned in the entire conversation between the informant and Jones. The informant admitted that he was familiar with the terminology of the cocaine trade, and testified that "two peoples are dealing with drugs or whatever, you don't say the word 'cocaine'. We've got nicknames for those words, different words for cocaine or sales and cocaine."

5. Agent Oster testified that "rocks" of crack cocaine were usually cut with razor blades from "cookies" of cocaine that had been "cooked" from powdered cocaine. Cocaine is generally packaged in sandwich bags that have been heat sealed with a butane lighter. There was no evidence that the razor blades, sandwich bags, or lighters found in Jones' kitchen had been used in connection with cocaine. No cocaine residue was found in the oven, on the kitchen table, or on the cooking utensils.

6. Jones does not attack the sufficiency of the evidence on the possession conviction (that is, where the police entered Jones' home, and found the cocaine residue in the bedroom where Jones was sleeping).

7. Jones also cites a litany of injustices alleged to have been committed by the trial judge against the defense counsel in other cases. Those issues are not in the record *sub judice*, and will not be addressed.