SOUTHWICK, P.J.,
For The Court.
¶ 1. David Harbin was convicted of one count of possession of a firearm by a felon and sentenced to a life term as an habitual offender. Harbin appeals his conviction alleging the following trial errors: failing to grant his motion for a mistrial, removing a juror for cause, allowing the State to present proof of more than one prior conviction, admitting into evidence a firearm for which a proper chain of custody had not been established, and failing to provide an adequate sentencing hearing. Harbin also alleges that the weight and sufficiency of the evidence require reversal.
¶ 2. We disagree with these allegations and affirm.
STATEMENT OF FACTS
¶ 3. Officer Kevin McCoy of the Green-ville Police Department was notified at approximately 8:00 A.M. that there was a vehicle parked in the middle of a city street. He went to the location, approached the vehicle, and noticed that there were two men asleep inside. The sleeping driver had a firearm stuffed into the front part of his pants and also a beer sitting between his legs.
¶ 4. McCoy requested that he be provided with back-up. Officer Kelvin Chillis was sent. The officers attempted to wake up the occupants of the vehicle by using their police sirens, horns, and also by *172 knocking on the vehicle’s windows. These efforts were unavailing.
¶ 5. McCoy approached the driver’s side of the vehicle and Chillis approached the passenger’s side. McCoy found the driver’s door to be locked. Chillis opened the passenger door and woke the passenger, later identified as David Harbin. Harbin unlocked the driver’s door as requested by the officers. Officer McCoy opened the driver’s door and immediately removed a blue .38 revolver.
¶ 6. Chillis asked Harbin if he also had a weapon. Harbin stated that he did not. Chillis searched Harbin and discovered a .38 automatic pistol on Harbin’s “left side inside of his pants.” After taking the firearm, Chillis handcuffed him. Harbin informed Chillis that he was a convicted felon.
¶ 7. Harbin was indicted by a grand jury for one count of possession of firearm by a felon. He had been convicted of aggravated assault in 1984 and of manslaughter in 1990. He was convicted after a jury trial. After his trial counsel was allowed to withdraw, the circuit court appointed the Washington County Public Defender to represent Harbin on appeal.
DISCUSSION

1. Motion for Mistrial and Removal for Cause

¶ 8. Harbin argues that the trial judge should have granted his motion for a mistrial. Harbin’s motion was based on the following colloquy during voir dire:
Court: Is there anybody in the panel— Mr. Harbin, would you please stand up and let the jury have a look at you, please, sir?
(Defendant complied) Court: You may be seated. Is there anyone in the panel who is related by blood or marriage to David Lee Harbin?
Juror Mitchell: I know him.
Court: Well, that’s my second question. Is there anybody who knows David Lee Harbin?

(Juror raised hand.)

Court: And what’s your name, please, sir?
Juror Mitchell: George Mitchell.
Court: Mr. Mitchell, tell me how you know Mr. Harbin?
Juror Mitchell: Just—
Court: All right thank you very much....
¶ 9. Though the record does not reflect it, the parties on appeal agree that the venireman stated that he knew Mr. Harbin because of their overlapping stints in jail. At the conclusion of voir dire, Harbin’s counsel made a motion for a mistrial. The following colloquy transpired.
Counsel for Harbin: Judge, can I move for a mistrial? Mr. George Mitchell, although we know my fellow is a convicted felon, he has tainted this pool with his outburst about serving time in county jail. I think the whole jury panel is tainted with those comments.
Court: What do you say, Mr. Gore?
State: Well, he just said how he knew him. He didn’t say what the circumstances were and didn’t comment on any of the facts of the case. I was going to move for cause to strike him because he did know Mr. Harbin, and they obviously discussed the case. He didn’t say anything out there today.
Court: Well, the jury has already heard that the defendant is a convicted felon according to the allegations of the indictment. So I don’t think that it would be prejudicial. There was no detail given or anything like that. So the motion is denied. Do you have any for cause? ...
*173 What do you say about that? They have moved to strike him for cause?
Counsel for Harbin: I have no comment.
¶ 10. A party challenging alleged trial error must assure that the record contains the necessary information on which to decide the issue. Burns v. State, 729 So.2d 203, 212 (Miss.1998). Nonetheless, here both briefs are in agreement. We may assume that Mitchell did state, as asserted by Harbin, that Mitchell became acquainted with Harbin in the county jail. Yet we find no error. As the trial judge stated, the jury venire knew before Mitchell’s statement and certainly learned at trial that Harbin was a convicted felon who was charged with possession of a firearm. The fact that the jury was informed that Harbin may have spent some time in the county jail is not prejudicial.
¶ 11. In addition, Harbin argues that the trial judge committed reversible error by removing the same juror that Harbin argues tainted the jury venire. We have quoted the colloquy in which the State requested that Mitchell be removed for cause. Harbin did not object. Without a proper objection, there is no issue to review. Puckett v. State, 788 So.2d 752, 764 (Miss.2001).

2. Proof of Two Previous Felony Convictions

¶ 12. Harbin’s indictment included information concerning his two previous convictions. This information appeared both in the section on the substantive crime of possession of a firearm and in a section alleging that he was an habitual offender. The alleged error is that the trial court should have limited the State to proving one prior conviction. Proving two was in Harbin’s view unnecessary and prejudicial. Prior to trial, Harbin’s trial counsel made a motion in limine to prevent the use of Harbin’s prior convictions to impeach him if he testified. M.R.E. 609. The trial court granted that motion. However, the court allowed the introduction of the prior convictions for the purpose of proving that Harbin was a convicted felon.
¶ 13. The crime for which Harbin was convicted in these proceedings prohibited “any person who has been convicted of a felony under the laws of this State ... to possess any firearm_” Miss.Code Ann. § 97-37-5 (Rev.2000). Evidence of one prior felony conviction would have sufficed. Harbin designates his manslaughter conviction as the unnecessary additional charge.
¶ 14. We first look to whether the issue was presented below. Harbin’s trial counsel objected to the introduction of the prior convictions for impeachment purposes under evidentiary Rule 609. No other objection was made to the introduction of dual convictions. Objecting on one ground does not raise, indeed it waives other grounds. Swington v. State, 742 So.2d 1106, 1110 (Miss.1999).
¶ 15. Otherwise waived issues may be considered if they present plain error. That requires that the error affect “substantial rights” of the accused. M.R.E. 103(d). However, we do not find that Harbin’s substantial rights were affected by the admission of two prior convictions. One of the prior convictions was for aggravated assault in 1984. The other was for manslaughter in 1990. Had the State been forced to choose between the two prior convictions, it likely would have chosen the later manslaughter conviction. For fundamental prejudice to arise, Harbin would need to be entitled to force the State to rely on the less serious prior charge. We find neither purpose nor precedent for such a rule. We also find no prejudice sufficient for plain error.

*174
3. Chain of Custody

¶ 16. Harbin argues that a proper chain of custody was not shown for the firearm. When the firearm was offered into evidence, the judge asked if there was an objection. Harbin’s counsel stated “[jjust the chain of custody, your Honor. I don’t think the chain of custody has been established as far as where the gun was up until today.” The objection was overruled.
¶ 17. At trial, an investigator for the Greenville Police Department stated that he handled Harbin’s case after the arrest. The investigator testified that the arresting officer, Chillis, had recovered a firearm from Harbin. The firearm was a “Jennings firearm, Model 48-380 caliber pistol.” Chillis’ signature appeared on the outside of the envelope containing the firearm. The envelope was only marked for identification during the investigator’s testimony.
¶ 18. During the testimony of Officer Chillis, the prosecutor asked if he could identify the evidence envelope containing the firearm. He responded that it contained “a firearm — model—Jennings model, .88 pistol, the weapon I logged in after getting it off Mr. Harbin at the time at the scene.” When asked whether he recognized the envelope, Officer Chillis stated that he did and also noted that it had his signature and Harbin’s name on it. Chillis opened the envelope, removed the weapon, and identified it as the weapon he removed from Harbin’s possession.
¶ 19. Resolving issues regarding the chain of custody of evidence is left to the discretion of the trial judge. If there is an indication of probable tampering with the evidence, chain of custody defects will require exclusion of the evidence. Nalls v. State, 651 So.2d 1074, 1077 (Miss.1995).
¶ 20. The argument regarding tampering is that there is a basis for suspicion that no gun was ever actually found on Harbin. Harbin’s counsel argues that the weapon identified by Officer Chillis likely was the gun found on the other occupant of the automobile, who was not a prior felon and was not charged with illegal weapon’s possession. The testimony was unequivocal and unimpeached that Officer Chillis found this weapon on Harbin. We find no abuse of discretion in admitting it.

k- Sentencing Hearing

¶ 21. Harbin argues that the trial court did not provide him with a proper sentencing hearing. After the verdict, the jury was excused. The trial court then asked defense counsel whether he was ready to proceed with sentencing. Counsel said that he was. The State then indicated that all it had to introduce was the proof already presented regarding Harbin’s two prior convictions. The Court said that it might be unnecessary to have a new hearing since the details about the convictions were already in evidence. The court then asked if either counsel had anything further on sentencing. Neither did. Immediately thereafter, the trial judge announced Harbin’s life sentence.
¶22. The Supreme Court has stated that “[w]hen habitual offender status is alleged and where the accused goes to trial, the trial court must hold a separate hearing without a jury to determine whether habitual status should be imposed.” Nathan v. State, 552 So.2d 99, 106 (Miss.1989). A court rule provides that after a “defendant is adjudged guilty of the offense charged, sentence must be imposed without unreasonable delay.” URCCC 11.01. Another rule states that “upon a finding of guilt, and where the court has discretion as to the sentence to be imposed, the court may direct that a presentence investigation and report be made.” URCCC 11.02.
*175 ¶ 23. Harbin argues that he was denied a separate hearing because the trial judge considered sentencing immediately after the verdict was read. There was no time delay, but there was a separate hearing held by the court without a jury to decide on a sentence. No new evidence was taken, but none was needed. A presentence report would have been superfluous since by statute Harbin had to receive a life sentence. Miss.Code Ann. § 99-19-83 (Rev.2000). We find no error on sentencing.

5. Sufficiency of Evidence

¶24. Harbin argues that his motions for directed verdict and for judgment notwithstanding the verdict should have been granted. Such motions are premised on the absence of sufficient evidence to prove one or more elements of the offense. If successful, the motions result in the discharge of the accused from further jeopardy on the charges. This is the necessary analysis:
We must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Jones v. State, 740 So.2d 904, 909 (Miss.1999). Harbin was charged with the crime of possession of a firearm by a convicted felon. There thus must be proof that (a) the individual has been convicted of a felony and (b) that he possessed the identified weapon.

a. Felony Conviction

¶ 25. Various law enforcement witnesses testified that they were aware that Harbin was a convicted felon. Some of that may have been hearsay. Arresting Officer Chillis testified that during the arrest Harbin admitted that he was a convicted felon. Most significantly, documentary evidence of the prior convictions existed when the “Pen Pak” on each pri- or conviction was introduced.
¶26. The final competent evidence on Harbin’s prior felonies was submitted through Pamela Miller. She was accepted as an expert in fingerprint analysis. She testified that she compared fingerprints taken from Harbin on the day of trial and the fingerprints that accompanied the “Pen Paks” that were introduced into evidence regarding the prior convictions. Miller testified that these prints matched those accompanying the 1984 aggravated assault evidence in 1984 and those that were part of the 1990 manslaughter conviction.

b. Possession of a Firearm

¶27. We have already discussed the evidence from arresting Officer Chillis and an investigator that a firearm was found on Harbin when he was frisked after exiting the car on the night of his arrest and that the firearm was the one introduced into evidence. The other officer participating in the arrests, testified that the weapon he removed from the driver of the vehicle was a revolver and not an automatic weapon like the one taken from Harbin.
¶28. One or more jurors apparently had a concern about the manner in which *176 the possession was shown. During their deliberations a note was sent the judge which asked, “Why was defendant’s fingerprints not found on the gun. There was no mention of this fact.” The trial judge replied, “You must decide the case based on the evidence presented.” There was no evidence regarding whether fingerprints from the guns were taken, and if so, what may have been found.
¶ 29. Whatever doubts any juror might initially have had was resolved against Harbin with the unanimous verdict of guilt. We find no basis for a court-directed judgment of acquittal.

6. Overwhelming Weight of the Evidence

¶ 30. Harbin agues that the jury’s verdict was against the overwhelming weight of the evidence. That is a different issue than sufficiency of evidence. When the weight of the evidence holding down a verdict is contested, an appellate court should review the record, accept the evidence consistent with the verdict, allowing that credibility choices are for jurors to make, and reverse only if convinced that to allow the judgment of conviction to stand would be an “unconscionable injustice.” Crawford v. State, 754 So.2d 1211, 1222 (Miss.2000).
¶ 31. Having detailed the evidence in the previous section, we find that the jury’s verdict of guilty was not against the overwhelming weight of the evidence.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF LIFE IMPRISONMENT AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.