## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-01393-SCT

*CARLOS BROWN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/28/2006 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD W. BOYKIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | ELEANOR JOHNSON PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED 10/18/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Carlos Brown was convicted of one count each of kidnaping (Miss. Code Ann. § 97-3-53 (Rev. 2006)), burglary (Miss. Code Ann. § 97-17-23 (Rev. 2006)), aggravated assault (Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2006)), attempted armed robbery (Miss. Code Ann. § 97-3-79 (Rev. 2006)), and shooting into a dwelling (Miss. Code Ann. § 97-37-29 (Rev. 2006)), and sentenced to eighty years in custody.  On appeal Brown argues that the state failed to present sufficient evidence to support his convictions, or, in the alternative, that the jury verdict is against the overwhelming weight of the evidence.

## Facts

¶2.     On May 5, 2005, Chiquita Scott was at her Jackson home with her four children, Chimaurie, Amber, Cortland, and Ladarius, and her sister, Erika Scott.  Around 10:30 p.m., the lock on the front door was shot and two masked men forced their way into the house.  The bullet from the gunfire hit Amber, age eleven, in the arm.  Amber ran to the back of the house where she, her mother, her aunt, and her siblings attempted to escape the intruders.  The two men demanded money and also asked for a man named Fat, which was the nickname of Chiquita and Erika's brother.  The sisters told their assailants that there was no money and that Fat did not live with them.  One man held Erika on the floor with his foot in her back and a gun to her head while the other man beat Chiquita several times with his gun.

¶3.     The two men fled the house, and the man who had assaulted Chiquita grabbed Amber and forced her outside.  Amber testified that the man had her in a headlock and was forcing her towards a white car with tinted windows.  Before reaching the car, Amber kicked her kidnaper in the shins, allowing her to escape.  She later described the man as having braids and a diamond earring in his left ear.

¶4.     Joseph White, Brown's co-defendant, testified for the State as part of a plea arrangement.  According to White, Brown picked him up earlier that night and drove to Gilbert Ewing's house.  White stayed in the car, and Brown returned about fifteen minutes later with Ewing.  The three men got into Ewing's white Mercury Grand Marquis, with Ewing in the driver's seat.  They drove to the home of Valerie Brown, the defendant's first cousin, which was about four blocks from the Scotts' house.  White and Brown then walked down the street  to the Scotts' house where Brown shot open and kicked in the front door.

White said that he simply followed Brown into the house and denied ever having a gun, asking for money, or holding Erika on the floor. According to White, Brown beat Chiquita with his gun and also forced Amber out of the house. Upon fleeing the house, White got into the car with Ewing, who was waiting down the street, and the two men drove off when they saw Brown approach with Amber. After making the block, they saw Brown without Amber. Brown got into the car and handed the gun to Ewing.

¶5.     Two weeks after the incident, Krystal Earle called the Jackson Police and told them that Ewing and Brown were involved in the robbery. Earle was Ewing's girlfriend at the time and had been at his house that night. She testified that Brown came over that night and asked Ewing to take him to Valerie's house because he had to make a "lick."[1] Brown said that he needed a mask and a gun, and that Ewing could sit in the car. Ewing retrieved his gun and left the house with Brown. Ewing returned about an hour later with new clothes and appeared "shaky" and "sweaty." Earle received a $1,000 reward for this information.

¶6.     Valerie Brown also testified for the State. On the night of the incident, Brown, Ewing, and White came to her house in Ewing's car. Brown and White left on foot, but Ewing stayed. Valerie sat in the car with Ewing for a few minutes listening to some music. She then returned inside to work on a school paper. At one point, she looked outside and

---

[1]"Lick" is slang for a robbery. *See United States v. Burroughs*, 650 F.2d 595, 597 n. 2 (5th Cir. Unit B July 1981) (explaining that to "make a lick" means to "commit a robbery"); *Hall v. State*, 785 So. 2d 302, 304 (Miss. App. 2001) (Defendant robbed a bank after telling witness that he "had a major lick he wanted to do."). *See also* T.I., "What Happened?" on *I'm Serious* (Arista 2001) ("Pray to God is nothing but a robbery. I gave them all I had so they pulled they lick off flawlessly.").

noticed that Ewing was not in his car. The next time she looked, the car was missing. Valerie then heard gunshots and attempted to call Ewing. When she could not reach him, she called the defendant. Brown told her that he did not know anything about the gunshots and that he was at home. He also told Valerie not to talk to him anymore.

## Standard of Review

¶7. A motion for a directed verdict and a motion for a judgment notwithstanding the verdict challenge the sufficiency of the evidence. *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005). When reviewing a case for sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The evidence must show "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Id.* (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). If, keeping in mind the reasonable-doubt standard, "reasonable and fair-minded men in the exercise of impartial judgement might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Id.* (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶8. A motion for a new trial, on the other hand, challenges the weight of the evidence. *Id.* at 844. We will disturb a jury verdict only when "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."

4

*Id.* (citing ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997)). This Court acts as a "thirteenth juror" and views the evidence in the light most favorable to the verdict. ***Id.*** (citing ***Herring***, 691 So. 2d at 957). A decision to reverse and order a new trial, "unlike a reversal based on insufficient evidence, does not mean that the acquittal was the only proper verdict." ***Id.*** (quoting ***McQueen v. State***, 423 So. 2d 800, 803 (Miss. 1982)).

**Discussion**

¶9.     Brown argues on appeal that there was insufficient evidence to support a verdict, or that the verdict was against the overwhelming weight of the evidence, because: (1) only Gilbert Ewing meets the description of the kidnaper; (2) only one intruder had a gun and Ewing was the only one seen with a gun; (3) the only direct testimony implicating Brown was substantially impeached; and (4) the only person the assailants attempted to rob was Fat, not Chiquita Scott.

**(1) Physical Description.**

¶10.    Amber Scott testified that the man who kidnaped her had braids in his hair and also wore a diamond earring. Joseph White and Krystal Earle testified that at the time of the incident the defendant was bald and had never had braids in his hair. White also testified that Brown did not wear earrings. On the other hand, three witnesses testified that Ewing wore braids in his hair.

¶11.    Chiquita told the police that the man who attacked her and took her daughter was around five feet six inches tall. There is no evidence in the record of Ewing's and Brown's height, but Valerie testified that Brown was shorter than Ewing.

5

¶12.    The defendant argues that this evidence shows that only Ewing could have been the attacker and not Brown.  However, the state presented sufficient evidence that would point to Brown as the attacker.  Joseph White testified that Brown was the one who shot the lock, kicked open the door, attacked Chiquita, and kidnaped Amber.  Krystal Earle also overheard Brown ask Gilbert for a gun and a ride to make a "lick."  Finally, Valerie Brown testified that Brown and White left her house while Ewing stayed behind.

¶13.    Additionally, when Amber was shown a picture of Ewing at trial, she testified that she did not consider his hair to be braided.

> Q:    [W]hen you talk about braids is this the kind of braids you would be talking about?
> A:    No.
> Q:    That's not?
> A:    No.
> Q:    Why not?
> A:    Because I am talking like braids like Erika Scott has in her hair over there.  Like braids like that.
> Q:    What's the difference between – in your mind do you know what a corn row is?
> A:    No.
> Q:    Okay.  How would you describe that man's hair?
> A:    Dread locks.
> Q:    Dread locks.  Okay.  Is there a difference in your mind, really, between a dread lock and a braid?
> A:    Yes.
> Q:    Okay.  Did you explain that to the police that when you said braids you really meant dread locks?
> A:    No.

According to the above testimony, Amber did not consider Ewing's hairstyle to be the one worn by her attacker.

**(2) Possession of the Gun.**

6

¶14. Brown argues that "the undisputed evidence was that only one of the two men had a weapon, and except for Joseph White's testimony, it was undisputed that the only person seen with a gun was Gilbert Ewing." First, this statement is untrue; there was testimony that *both* men had guns. Erika Scott testified that her assailant held a gun to her head while the other intruder beat her sister with a gun. Further, although White testified that only Brown had a gun, he admitted on cross-examination that he was prohibited from possessing a firearm due to his prior felony convictions and it would not be in his interest to admit to having a gun.

¶15. Second, while only White's testimony placed a gun in Brown's hand, reasonable jurors could conclude that Brown was wielding a firearm. This argument challenges the weight and credibility of White's testimony, and it is axiomatic that matters regarding the weight and credibility of the evidence are to be resolved by the jury. *Neal v. State*, 451 So. 2d 743, 758 (Miss. 1984). As discussed below, the defense was allowed every opportunity to impeach White, and his credibility as a witness was a determination for the jury.

**(3) Co-defendant's testimony.**

¶16. Brown also challenges the weight and sufficiency of the evidence, as White was the only witness who could put him at the scene of the crime. The crux of his argument is that White's testimony was uncorroborated, and as an accomplice, his substantially impeached testimony cannot support a conviction. It is true that the uncorroborated testimony of an accomplice must be "reasonable, not improbable, self-contradictory or substantially impeached." *Mathew Jones v. State*, 740 So. 2d 904, 910 (Miss. 1999) (quoting *Louis Jones v. State*, 368 So. 2d 1265, 1267 (Miss. 1979)). However, this argument fails for two reasons.

7

¶17.    First, contrary to the defendant's assertion, White's testimony was corroborated by at least two other witnesses. Krystal Earle and Valerie Brown both saw the defendant shortly before the crime occurred.  Earle heard Brown ask Ewing for a gun and a ride to make a "lick," while Valerie testified that Brown and White left her house and Ewing stayed behind. This Court has held that "[w]here there is slight corroborative evidence, the accomplice's testimony is likewise sufficient to sustain the verdict." **Ballenger v. State**, 667 So. 2d 1242, 1253 (Miss. 1995) (quoting **Mason v. State**, 429 So. 2d 569, 571 (Miss. 1983)).

¶18.    Second, the jury heard relevant evidence that would impeach White's testimony.  He admitted that his testimony was in exchange for a ten-year sentence and that he had five prior felony convictions.  Because matters regarding the weight and credibility of the evidence are to be resolved by the jury and because "the prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence," this argument is without merit. **Mathew Jones**, 740 So. 2d at 910 (quoting **Collier v. State**, 711 So. 2d 458, 461 (Miss. 1998)).

**(4) Intent to Rob.**

¶19.    Finally, Brown argues that the evidence cannot support a charge of attempted robbery because he only intended to rob Fat, not Chiquita.  However, the evidence demonstrates that the intruders intended to rob the occupants of the house, including Chiquita Scott.  Chiquita, Erika, and Amber all testified that the assailants were demanding money.  It was reasonable to conclude that the two men would have taken the money from any one of the occupants, not just Fat.

## Conclusion

8

¶20.    The state presented sufficient evidence to support convictions of kidnaping, burglary, aggravated assault, attempted armed robbery, and shooting into a dwelling. Additionally, viewing the evidence in favor of the verdict, the defendant is not entitled to a new trial. Therefore, the assignments of error are without merit, and the judgment is affirmed.

¶21.    **COUNT I: CONVICTION OF SHOOTING INTO AN OCCUPIED DWELLING AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT I SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT III AND CONSECUTIVE TO THE SENTENCES IN COUNTS II, IV AND V.**
**COUNT II: CONVICTION OF BURGLARY OF A HOUSE AND SENTENCE OF TEN(10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVE TO THE SENTENCES IN COUNTS I AND III AND ALSO CONSECUTIVE TO THE SENTENCES IN COUNTS IV AND V.**
**COUNT III: CONVICTION OF AGGRAVATED ASSAULT WITH A WEAPON AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I AND CONSECUTIVE TO THE SENTENCES IN COUNTS II, IV AND V.**
**COUNT IV: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT IV SHALL RUN CONSECUTIVE TO THE SENTENCE IN COUNTS I AND III AND ALSO CONSECUTIVE TO THE SENTENCES IN COUNTS II AND V.**
**COUNT V: CONVICTION OF KIDNAPING AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT V SHALL RUN CONSECUTIVE TO THE SENTENCES IN COUNTS I AND III AND ALSO CONSECUTIVE TO THE SENTENCES IN COUNTS II AND IV.**

       **SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**