836 So.2d 788 (2002)
Derwin Russell BOZEMAN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01669-COA.
Court of Appeals of Mississippi.
June 25, 2002.
Rehearing Denied October 22, 2002.
Certiorari Denied January 30, 2003.
*789 Ross Parker Simons, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellee.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
IRVING, J., for the court.
¶ 1. Derwin Bozeman was convicted of murder by a Jackson County Circuit Court jury and was sentenced to a life term in the custody of the Mississippi Department of Corrections. Bozeman has prosecuted this appeal from the denial of his post-trial motion for a judgment notwithstanding the verdict or in the alternative for a new trial. Bozeman challenges the constitutionality of the statute which provides the terms and conditions for early release of inmates serving a life sentence, and the trial court's ruling on comments made by the prosecuting attorney in closing argument. Finding no reversible error, we affirm.

FACTS
¶ 2. According to the State's evidence, the facts are as follows. Bozeman and his wife, Lisa, were having marital difficulties that resulted in a separation. On or about the second day of the separation, Bozeman telephoned Lisa at her parents' home where she and the couple's two young children were living and asked her to come home. Lisa refused. Bozeman then offered to come over and get Lisa and the children and bring them back to what had been the family residence for a visit. Lisa again refused, fearing that Bozeman would not bring her back. In a final effort to convince Lisa that his intentions were innocent, Bozeman suggested that Lisa's brother, Jamie, who was also living at the parents' home, could come with her and the children. Lisa agreed and Bozeman drove over and picked up Lisa, Jamie and the two children. Upon arrival at Bozeman's residence Jamie was asked by Bozeman to remain outside with the children so that he and Lisa could talk.
¶ 3. Once the couple was alone, Bozeman again pleaded with Lisa for a reconciliation. When she refused, he became upset and pulled a gun from the back waistband of his trousers. With the gun in his hand, Bozeman went to the door and asked Jamie to come inside but told the children to remain outside. Once Jamie was inside the residence, Bozeman closed the door and pointed the gun at him. Bozeman asked Jamie if he wanted to "start something" to which Jamie responded, "I don't want any problems, please don't do this." Bozeman then shot and killed Jamie.
¶ 4. Following the shooting, Bozeman instructed Lisa to call 911 and threatened to kill her, the children and the rest of her *790 family if she did not corroborate his claim of self-defense in the shooting. Initially, Lisa did as she was told; however, after Bozeman was taken into custody, she told the authorities that Bozeman did not act in self-defense.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Constitutionality of Statute
¶ 5. Bozeman alleges that the statute, Mississippi Code Annotated section 47-5-139(1)(a) (Rev.2000), which governs when and how he can seek an early discharge from his sentence is unconstitutional. That statute reads in pertinent part as follows:
(1) An inmate shall not be eligible for the earned time allowance if:
(a) The inmate was sentenced to life imprisonment; but an inmate, except an inmate sentenced to life imprisonment for capital murder, who has reached the age of sixty-five (65) or older and who has served at least fifteen (15) years, may petition the sentencing court for conditional release.
Bozeman argues that the statute discriminates against everyone who is less than fifty years of age at the time of sentencing and gives preferential treatment to those fifty years of age and over, in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article 3, Sections 14 and 31 of the Mississippi Constitution.
¶ 6. This issue was not raised in the lower court; consequently, the State argues that the issue is procedurally barred. As support for this argument, the State cites the holding in Fleming v. State, 604 So.2d 280, 292 (Miss.1992), that constitutional arguments that are not asserted at trial are waived. The State argues that further support for imposing the procedural bar can be found in Colburn v. State, 431 So.2d 1111 (Miss.1983), wherein the supreme court ruled as follows with regard to an attack on the constitutionality of Mississippi Code Annotated section 97-3-7(2) (Rev.2000):
The constitutionality of section 97-3-7(2) was never raised in the trial court. Appellant filed no demurrer, motion to quash, or objection, nor was mention made in his motion for a new trial as to the constitutionality of section 97-3-7(2). This Court has continuously adhered to the rule that questions will not be decided upon appeal which were not presented to the trial court and that court given an opportunity to rule on them. Only matters of jurisdiction may be raised for the first time on appeal.
Appellant, by failing to attack the constitutionality of section 97-3-7(2) by proper motion waived any error in this regard and cannot now seek reversal on this ground in this Court.
Id. at 1113-14 (citations omitted). Lastly, the State cites the holding of Gatlin v. State, 207 Miss. 588, 594, 42 So.2d 774, 775 (1949), wherein the Mississippi Supreme Court declared that it will not rule on the issue of the constitutionality of a statute unless such a ruling is necessary to the disposition of the case.
¶ 7. Bozeman counters that Mississippi appellate courts have the power to recognize plain error where substantial rights are affected and when fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice as the supreme court held in Gray v. State, 549 So.2d 1316, 1321 (Miss.1989).
¶ 8. However, this Court is mindful that in Taylor v. State, 754 So.2d 598, 603(¶ 11) (Miss.Ct.App.2000), this Court observed that:
"The plain error doctrine has been construed to include anything that `seriously *791 affects the fairness, integrity or public reputation of judicial proceedings.'" Our analysis, therefore, necessarily includes a determination of whether there is an error that is some deviation from a legal rule, whether that error is plain, clear or obvious, and whether the error is prejudicial in its effect upon the outcome of the trial court proceedings.
(citations omitted).
¶ 9. Bozeman makes no claim that the lower court erred in any way that was prejudicial in its effect upon the outcome of his trial court proceedings, and this Court finds no such error. As the State correctly points out, the application of Mississippi Code Annotated section 47-5-139 to Bozeman's situation might become the basis of a petition for post-conviction relief, but it is not ripe for review on direct appeal of his conviction and sentence as it played no role in either. Since Bozeman makes no claim of error on the part of the lower court, there is no decision by the lower court for this Court either to affirm or to reverse. "Therefore, we conclude our review of this issue by simply resolving it adversely to him." Millender v. State, 734 So.2d 225, 233(¶ 33) (Miss.Ct. App.1999).

2. Closing Argument by Prosecutor
¶ 10. Bozeman claims that reversible error occurred when the prosecutor made the following comments during closing argument:
And I keep hearing this stuff about deliberate design. Well, he didn't intend for the victim to come over so he could shoot him. Deliberate design does not have to come into effect in a given time-frame. If you walk in this room now, and I've never seen you before, or any one of you, I can pick up that gun, shoot you dead as a hammer. If I do that, that's deliberate design. It's at the instant I pull the trigger.
Bozeman concedes that he did not make a contemporaneous objection, but argues that he preserved the right to object by calling the matter up in his post-trial motion for new trial or in the alternative a judgment notwithstanding the verdict. The trial court denied his motion, finding that there was no contemporaneous objection to the comments and that the comments did not constitute error.
¶ 11. The State, citing Monk v. State, 532 So.2d 592, 600 (Miss.1988), argues that Bozeman's failure to make a contemporaneous objection waived the issue on appeal, and that the issue is not revitalized by virtue of its belated appearance in his post-trial motion. The State is correct. Clearly, Bozeman is procedurally barred for lack of a contemporaneous objection. Walker v. State, 671 So.2d 581, 597 (Miss. 1995).
¶ 12. Procedural bar aside, the Mississippi Supreme Court has held that the test for determining whether closing argument is so prejudicial that an objection should be sustained or a new trial granted is "whether the natural and probable effect of improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by prejudice." Harvey v. State, 666 So.2d 798, 801 (Miss.1995); Johnson v. State, 596 So.2d 865, 869 (Miss.1992). The trial court exercises considerable discretion in applying this test and in ruling on whether arguments are overly prejudicial, considering the circumstances of each case. Harvey, 666 So.2d at 801.
¶ 13. This Court does not find that the trial court abused its discretion in finding that the prosecutor's comments were harmless. Nor do we find that the natural and probable effect of the comments was to create unjust prejudice against Bozeman *792 so as to result in a decision influenced by prejudice. Accordingly, the trial court is affirmed on this issue.
¶ 14. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.