MYERS, J.,
for the Court.
¶ 1. Michael Johnson was tried in November 2000 for the murder of Dustin Sean Parker. A jury returned a guilty verdict and the Circuit Court of Rankin County sentenced Johnson to life in the custody of the Mississippi Department of Corrections. Johnson now appeals, asserting the following nine issues:
I. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR NOT FILING A MOTION FOR A NEW TRIAL OR JNOV.
II. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO A NUMBER OF LEADING AND HEARSAY QUESTIONS BY THE STATE, AS WELL AS IMPROPER BAD ACT TESTIMONY.
III. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR NOT ATTEMPTING TO SUPPRESS SEVERAL OF JOHNSON’S STATEMENTS TO THE POLICE.
IV. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR PERMITTING THE STATE TO INTRODUCE EXHIBIT FIVE INSTEAD OF MERELY MARKING IT FOR IDENTIFICATION.
V. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO THE INTRODUCTION OF AUTOPSY PHOTOGRAPHS.
VI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT GRANTING JURY INSTRUCTIONS D-l AND D-2 AND NOT GRANTING A CAUTIONARY INSTRUCTION.
VII. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RETRIEVE AND/OR DISCLOSE THE LOCATION OF THE MURDER WEAPON AFTER BEING TOLD OF ITS LOCATION.
VIII. WHETHER THE PROSECUTOR COMMITTED ERROR BY VOUCHING FOR THE CREDIBILITY OF THE STATE’S KEY WITNESS.
IX. WHETHER THE PROSECUTOR DENIED JOHNSON A FAIR TRIAL BY FAILING TO ADVISE THE TRIAL COURT OF JOHNSON’S INCOMPETENCE.
Facts and Procedural History
¶ 2. On the evening of February 8, 1998, Michael Johnson (Johnson) and Aaron Johnson (Aaron) planned to kill Aaron’s roommate, Dustin Sean Parker. They struck Parker on the head several times and Johnson choked Parker with his *390 hands. They then wrapped Parker in bags and buried him in the woods. After returning home and cleaning up the crime scene, they made up their own stories of what happened to Parker.
¶ 3. Sometime later, Aaron wrote three checks on Parker’s account. The police questioned him, and he admitted to the killing, claiming that it was self-defense and that Johnson was only an accessory after the fact.
¶ 4. Over the next year, Johnson bragged to several people of how he had killed Parker and disposed of the body. These people thought he was joking until the body was found exactly where Johnson had described it. At trial, Johnson admitted to participating in all of the above acts except the actual killing of Parker.
¶ 5. After a two-day trial, Johnson was found guilty of murder and the circuit court sentenced him to life in the custody of the Mississippi Department of Corrections. His trial counsel did not file a motion for a new trial or for a JNOV. After several requests for a new lawyer to pursue his appeal, the Rankin County Circuit Court granted Johnson an out-of-time appeal on May 15, 2001, and assigned him a new lawyer for this appeal on July 31 of that year. On January 24, 2002, the trial judge signed an order appointing Johnson’s current counsel, authorizing an out-of-time appeal, and ordering the court reporter to prepare a transcript. The case then came before us.
Legal Analysis
I. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR NOT FILING A MOTION FOR A NEW TRIAL OR JNOV.
II. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO A NUMBER OF LEADING AND HEARSAY QUESTIONS BY THE STATE, AS WELL AS IMPROPER BAD ACT TESTIMONY.
III. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR NOT ATTEMPTING TO SUPPRESS SEVERAL OF JOHNSON’S STATEMENTS TO THE POLICE.
IV. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR PERMITTING THE STATE TO INTRODUCE EXHIBIT FIVE INSTEAD OF MERELY MARKING IT FOR IDENTIFICATION.
V. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO THE INTRODUCTION OF AUTOPSY PHOTOGRAPHS.
VI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT GRANTING JURY INSTRUCTIONS D-l AND D-2 AND NOT GRANTING A CAUTIONARY INSTRUCTION.
VII. WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RETRIEVE AND/OR DISCLOSE THE LOCATION OF THE MURDER WEAPON AFTER BEING TOLD OF ITS LOCATION.
VIII. WHETHER THE PROSECUTOR ENGAGED IN MISCONDUCT BY FAILING TO RESOLVE THE ISSUE OF JOHNSON’S INCOMPETENCE.
IX. WHETHER THE PROSECUTOR ENGAGED IN MISCONDUCT BY VOUCHING FOR THE CREDIBILITY OF THE STATE’S KEY WITNESS IN CLOSING ARGUMENTS
¶ 6. Since the first seven issues all deal with ineffective assistance of counsel, we will consider them together. We find the standard of review for such a claim in
*391 Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The test to be applied is (1) whether counsel’s overall performance was deficient and (2) whether or not the deficient performance, if any, prejudiced the defense. The defendant has the burden of proving both prongs. The adequacy of counsel’s performance, as to its deficiency and prejudicial effect, should be measured by a “totality of the circumstances.” However, there is a strong, yet rebuttable, presumption that the actions by the defense counsel were reasonable and strategic. In short, defense counsel is presumed competent.
McDonald v. State, 847 So.2d 281, 283(¶ 4) (Miss.Ct.App.2003) (citing Ratliff v. State, 752 So.2d 416, 419(¶ 6) (Miss.Ct.App.1999)).

Failure to make Post-trial Motions

¶7. We first turn to whether the trial counsel rendered ineffective assistance to Johnson’s defense by failing to make a motion for a new trial or a motion for a JNOV. In fact, the record is devoid of any post-trial motions except those done by Johnson on a pro se basis.
¶ 8. In Holland v. State, 656 So.2d 1192 (Miss.1995), the supreme court dealt with ineffective assistance of counsel in a drug conviction. Holland’s lawyer at trial failed to make any post-trial motions, move for a directed verdict, or even ask for a peremptory instruction. Id. at 1197. On appeal, the supreme court found that the lawyer’s performance did amount to ineffective assistance of counsel. While the Holland court did not specify which, if any, of the three acts Holland’s lawyer omitted was most serious, it did explain that the omissions “deprived the trial judge of the opportunity to review the evidence and reexamine possible errors at trial. Specifically, it prevented the trial judge from reconsidering whether the evidence was sufficient to support the charge....” Id. at 1197-98. This, coupled with the trial strategy of admitting guilt of possession, but arguing that the evidence was insufficient to prove intent to distribute, amounted to ineffective assistance of counsel. Id. at 98.
¶ 9. In the case before us today, Johnson’s strategy was similar. At trial, it was admitted that he was an accessory after the fact. He did help hide the body and helped clean up the crime scene. However, it was argued, that Aaron, and not Johnson committed the murder. By failing to make a post-trial motion, the trial judge was not provided an opportunity to reconsider whether the evidence was sufficient to support the charge of murder. Therefore, Johnson’s trial counsel’s performance was deficient under the first prong of the Strickland test.
¶ 10. Johnson, in his brief to this Court, does not point to any facts in the record or make a persuasive argument that, had trial counsel made the appropriate post-trial motion, there was a substantial likelihood of a different outcome, i.e., that his motion would have been granted. Johnson, as the appellant, has the burden of persuasion on this point and his failure to offer any basis for us to conclude that such post-trial motions had any probability of success must be seen as fatal to this claim.

Failure to Make Objections

¶ 11. It is well settled that failure to make certain objections cannot give rise to an ineffective assistance of counsel claim. McGiiberry v. State, 843 So.2d 21, 31(¶ 26) (Miss.2003); Woodson v. State, 845 So.2d 740, 742(¶ 8) (Miss.Ct.App.2003). We therefore find no merit in this argument.

*392
Failure to Suppress Statements

¶ 12. Johnson next argues that his trial counsel allowed the State to use statements he made to the police against him, and failed to attempt to suppress those statements. Johnson made these statements voluntarily and law enforcement gave him the Miranda warning before he gave the statements. At first, Johnson claimed Parker had assaulted Aaron and Johnson came to Aaron’s defense. Johnson then tried to blame his deceased father for Parker’s death. After this story, Johnson again claimed he was defending Aaron from Parker. The interrogating officer confronted Johnson with the inconsistent physical evidence, and Johnson then confessed to the unprovoked murder of Parker.
¶ 13. Johnson’s argument that these statements should have been suppressed is similar to the argument advanced in Sanders v. State, 825 So.2d 53, 58(¶ 9) (Miss.Ct.App.2002). In Sanders, the defendant gave a voluntary statement to the police that was used against him in trial. Just as in Sanders, Johnson’s statement was given voluntarily. Also, Johnson makes no argument of why this statement was inappropriate, other than it was used against him in trial. If that were our standard, then no defendant’s statement could ever be used against him. The decision of whether or not to attempt to suppress this statement falls within the realm of trial strategy, and is not an example of ineffective counsel. Id. Even had trial counsel been in error for not attempting to suppress the statement, there was enough physical evidence and testimony given against Johnson for this possible failure to not have prejudiced his defense.
¶ 14. In this section of his brief, Johnson also makes an argument concerning jury instructions. Since this was not distinctly identified in his statement of issues, we will not consider this argument. M.R.A.P. 28(a)(3).

The Admission of State’s Exhibit 5

¶ 15. Johnson’s next issue deals with whether it was proper for a lead pipe, similar to the murder weapon to be introduced into evidence. Johnson argues that his trial counsel was ineffective for not objecting to it being introduced.
¶ 16. Deputy Greg Eklund of the Rankin County Sheriffs Department testified that Johnson admitted to using a pipe used as a clothes rod in a closet to beat Parker to death. This rod was recovered by Deputy Eklund and marked for identification with his initials and the date. The rod was sent to the crime lab and examined for forensic evidence. None was found, and this would be consistent with Aaron’s statement that they had thoroughly cleaned the rod.
¶ 17. The State moved to introduce the pipe, and Johnson’s trial counsel stated:
Your Honor, we have no objection to the pipe being introduced into evidence as a pipe, but not as the murder weapon as such. It may be proven to be the murder weapon later on, of course, but we don’t mind introducing it as a pipe, not as the murder weapon.
¶ 18. A bench conference was immediately held, at which the following was said:
The Court: [Ejither it goes in for I.D., [or into evidence.] Which do you want?
The State: It can go in as what was gathered as evidence at that home. Now, if he wants to say it has no value and it didn’t do anything, that’s fine.
¶ 19. The trial court again asked trial counsel whether he had any objection to the pipe entering evidence, and he replied that he did not.
*393 ¶ 20. The proper predicate was laid for this pipe to be entered into evidence. Ek-lund testified to what it was, where it came from, when it was obtained, and how he was able to identify it. As the State said in the bench conference, it was then up to the defense to attempt to discredit the evidence, which it did. The defense questioned Eklund on whether any physical or forensic evidence linked the pipe to the murder. There is no merit to the contention that trial counsel was ineffective as it concerns this exhibit.

Failure to Object to Autopsy Photos

¶ 21. Johnson’s next allegation of ineffective assistance of counsel has to do with his trial counsel’s decision to not object to the admission of photographs taken at the autopsy. Specifically, three photographs of Parker’s skull—two of the left side and one photograph taken from above. The decision to admit photographs rests soundly within the discretion of the trial judge. Jackson v. State, 672 So.2d 468, 485 (Miss.1996). The decision to admit photographs will be reversed only when it is found to be an abuse of discretion. Id. In this case, the photographs are not particularly gruesome. While some soft tissue appears visible in the photographs, it is in an almost mummified condition due to where the corpse was buried. There was no blood or gore in the photographs. These photographs have probative value in that they give the jury a better idea of the size of the wound and the force required to cause such a wound. As such, their probative value outweigh any prejudicial effect they may have. Id.; Marks v. State, 532 So.2d 976, 981 (Miss.1988). See M.R.E. 403. Failing to object to these photographs was therefore not ineffective assistance of counsel.
VI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT GRANTING JURY INSTRUCTIONS D-l AND D-2 AND NOT GRANTING A CAUTIONARY INSTRUCTION.
¶ 22. Proposed jury instructions D-l and D-2 were instructions on manslaughter and accessory after the fact. The trial judge refused the instructions since they were not in “proper form.” Instruction D-1 read, “The court instructs the jury that if in your opinion, the credible evidence does not rise to the level of murder under the law, then you may find him guilty of manslaughter instead of murder. Manslaughter is a lesser included offense to the crime of murder.” Instruction D-2 read, “The court instructs the jury that a lesser included offense in this case is accessory after the fact.”
¶ 23. Where the evidence entitles a party to have a jury instruction on a particular issue, and an instruction is proffered but refused, the trial judge has a duty to either reform that instruction or to allow counsel the opportunity to correct the instruction’s deficiencies. Harper v. State, 478 So.2d 1017, 1018 (Miss.1985). Since no attempt at reforming these instructions was made, we must look to see whether the evidence warranted the instruction.
¶ 24. Manslaughter is defined as “[t]he killing of a human being, without malice, 'in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense.... ” Miss.Code Ann. § 97-3-35 (Rev.2000). The evidence presented indicated that Michael Johnson and Aaron Johnson talked about killing Parker. This conversation took place about four to six hours before the murder actually occurred. They discussed the time and method of the murder, and carried it out just as it was discussed. Other testimony, namely that of Michael Johnson, indicated that no discussion took *394 place, and the murder occurred while he was not at the Parker/Johnson residence. Either way, a manslaughter instruction was not warranted. Either the jury believed that Michael Johnson and Aaron Johnson planned the murder, or they believed that Michael played no part in killing Parker. There was no error in denying instruction D-l.
¶ 25. A jury instruction must not only be warranted by the evidence, it must also correctly state the law. Munford v. Fleming, 597 So.2d 1282, 1286 (Miss.1992). Instruction D-2 incorrectly states that accessory after the fact is a lesser-included offense of murder. Accessory after the fact is a separate crime. Miss.Code Ann. § 97-1-5 (Rev.2000). Additionally, we find that no reasonable juror could find that Michael Johnson did not commit the murder. This is especially true considering he admitted to doing so to the police and bragged about it to other witnesses.
¶ 26. Johnson also now argues that he should have been granted a cautionary instruction regarding the testimony of Aaron Johnson. A cautionary instruction is required where the State’s evidence rests solely on an accomplice’s testimony. Montgomery v. State, 830 So.2d 1269, 1272(¶ 9) (Miss.Ct.App.2002). That was not true here. Other witnesses testified that Johnson had bragged about the murder. Again, Johnson also admitted to this during police interrogation. We find no error in this issue.
VII.WHETHER JOHNSON’S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RETRIEVE AND/OR DISCLOSE THE LOCATION OF THE MURDER WEAPON AFTER BEING TOLD OF ITS LOCATION.
¶ 27. In his pro se brief, Johnson argues that he told his trial counsel of the location of the murder weapon, but counsel made no effort to retrieve it. He has only his allegations as the factual basis of this claim. Police searched the location where they were told they could find the murder weapon and it was never located. Johnson’s counsel brought up this point on cross examination. There is no basis for an ineffective assistance of counsel claim.
VIII. WHETHER THE PROSECUTOR ENGAGED IN MISCONDUCT BY FAILING TO RESOLVE THE ISSUE OF JOHNSON’S INCOMPETENCE.
¶ 28. Johnson claims that by saying during his testimony that he was taking medication to help him sleep, the prosecutor was placed on notice of his mental incompetence. We find no merit in this issue since Johnson does not make any showing that any medication he was taking actually rendered him incompetent to assist his own defense. Brown v. State, 798 So.2d 481, 505(¶ 61) (Miss.2001).
IX. WHETHER THE PROSECUTOR ENGAGED IN MISCONDUCT BY VOUCHING FOR THE CREDIBILITY OF THE STATE’S KEY WITNESS IN CLOSING ARGUMENTS
¶ 29. Johnson argues that he suffered prejudice by the prosecutor’s vouching for the State’s key witness, Aaron Johnson, during closing arguments. We find this issue is procedurally barred. Any objections to closing arguments must be made at trial or they are procedurally barred. Bozeman v. State, 836 So.2d 788, 791(¶ 11) (Miss.Ct.App.2002).
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
*395 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J, CONCURS IN RESULT ONLY.